## HORNBERGER v. MILLER.

(Supreme Court, Appellate Division, First Department. April 7, 1898.)

1. CORPORATIONS—LIMITATION OF POWER TO HOLD PROPERTY.

Where the property already owned by a benevolent corporation organized under Laws 1848, c. 319, does not equal the amount it is authorized by law to take, receive, and hold, a further devise, which brings the total beyond that limit, is not wholly void, but the title vests in the corporation, subject to being devested as to that portion which exceeds the limit; and a conveyance by the corporation of a portion of the property devised vests a good title in the purchaser, where the consideration received for such transfer, with the other property owned by the corporation prior to the receipt of the devise, does not exceed the amount that the corporation was entitled to take and hold.

2. CONSTRUCTION OF WILL—LAPSING OF LEGACY.

Testatrix, after making specific bequests, gave the remainder of her estate to her six children (naming them), "share and share alike, to have and to hold the same to them, their heirs and assigns." During the life of the testatrix two of these children died without issue. Held, that the devise was to the children named as tenants in common, and not as a class, and that the shares of the children who died lapsed, and vested in the testatrix's heirs at law.

3. SPECIFIC PERFORMANCE—SUFFICIENCY OF PLAINTIFF'S TITLE.

About 30 years before the trial of an action for specific performance, C., a former owner of the property, had died, and under a partial intestacy an undivided share in the property had passed to her heirs at law. The question was whether all these heirs had joined in the conveyance to plaintiff. It appeared that a child of C. had predeceased her, leaving a son, J., and the only evidence respecting him was that the family had not heard of him for some 50 years. Held not to raise a presumption that J. died before C., or that he had not left heirs, or disposed by will or otherwise of his interest, and that plaintiff's title was not marketable.

Appeal from special term.

Action by George Hornberger against Solomon Miller. From a judgment of the special term dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ.

Campbell E. Locke, for appellant.
Joseph Fettretch, for respondent.

INGRAHAM, J. The action was brought for the specific performance of a contract to convey real estate. The agreement was

for an exchange of property, the defendant agreeing to convey certain property upon East Twelfth street, in the city of New York, to the plaintiff for the sum of $75,000, payable part in cash, part by assuming a mortgage upon the premises to be conveyed, part by transferring a second mortgage on other premises in East Twelfth street, and $20,000 by conveying a house and lot of land on Seventh street, in the city of New York. The complaint alleges that the plaintiff tendered a deed conveying the property in Seventh street provided for in the contract, and tendered a compliance with the conditions of the contract upon his part, but that the defendant was unable to carry out and complete the contract, for the reason that he was unable to convey the premises in East Twelfth street so as to transfer a marketable title thereto. The defendant, answering the complaint, alleges that he was able and willing to convey the premises in Twelfth street, and to give to the plaintiff a marketable title; that he tendered such a conveyance, but that the plaintiff was unable to carry out and complete the contract, for the reason that he was and still is unable to give and transfer a marketable title to the Seventh street property; and demands an affirmative judgment against the plaintiff for $4,200 and interest. Upon the trial of the action at special term the court held that the defendant's title to the Twelfth street property was good, but that the plaintiff's title to the Seventh street property was not a marketable title, and directed judgment for the defendant, with costs. From that judgment the plaintiff appeals.

To sustain this judgment, it was necessary for the court to find that the plaintiff's title to the Seventh street property was not a marketable title, and that the defendant's title to the Twelfth street property was marketable. The objection to the defendant's title to the Twelfth street property is based entirely upon the fact that the devise of the residuary estate of one Helen S. Folsom to a corporation known as the "St. John the Baptist Foundation" was void or voidable. It seems that the property in question, with considerable other property, both real and personal, was owned by Helen S. Folsom, who died in the year 1882, leaving a last will and testament, by which, after certain specific legacies, she gave all the rest of her estate, both real and personal, to said corporation for the general purposes of said corporation. This will was admitted to probate on June 26, 1882, and the objection to the title acquired by the corporation by this devise and bequest was that such property was of the value of at least $243,000, and that such corporation was not authorized to take the property, real or personal, by devise or bequest, to a greater value than $150,000, or than was required to clear an annual income of over $10,000, and, as this property exceeded that gross value, and the clear annual income thereof exceeded the sum of $10,000, this corporation had no power to take the property devised by Miss Folsom; that the devise in question was a nullity, and did not operate to devest the testator of the title to the property; that the property did not pass under such devise, but that it passed to the testator's heirs at law. This corporation, the "St. John the Baptist Foundation," seems to have

been organized under chapter 319 of the Laws of 1848. A corpo- ration, organized under this statute as originally passed, was au- thorized to take, receive, purchase, and to hold real estate for the purposes of its incorporation to an amount not exceeding $50,000, and personal property to an amount not exceeding $75,000, but the clear annual income of such real and personal estate was not to exceed $10,000. By section 6 of the act, it was provided that any corporation formed under the act should be capable of taking, holding, or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament of any person whatsoever, the clear annual income of which devise or be- quest should not exceed the sum of $10,000. By chapter 641 of the Laws of 1881, the restriction as to the taking, receiving, pur- chasing, and holding real and personal estate was modified so that any corporation organized under the act of 1848 shall "in law be capable of taking, receiving, purchasing and holding real estate for the purposes of their corporation to an amount not exceeding the sum of two hundred thousand dollars in value, and personal es- tate for like purposes to an amount not exceeding the sum of two hundred thousand dollars in value, but the clear annual income of such real and personal estate shall not exceed the sum of fifty thousand dollars, subject, however, to the restrictions upon devises and bequests contained in an act entitled 'An act relating to wills,' passed April 13, 1860." This last act relating to wills is chapter 360 of the Laws of 1860, and prohibits a person having a husband, wife, child, or parent from devising or bequeathing to any benevo- lent or charitable corporation more than one-half part of his or her estate.

This corporation had the right to take, by will, real estate not exceeding the value of $200,000, and personal estate not exceeding the sum of $200,000 in value, provided that the clear annual income of such real and personal property did not exceed the sum of $50,- 000. That this authorization was intended to apply to a devise or bequest of property by will, as well as to a conveyance or transfer by deed or gift, is clear from the fact that the only limitation upon the right of the corporation to take, receive, purchase, or hold is the restriction contained in the act of 1860, which applies only to wills. There is no evidence to show, nor is it claimed by the appellant, that this corporation, prior to the time of the probate of the will of Miss Folsom, owned property in excess of the amount which it was authorized to take or hold by virtue of any last will and testament. The appellant claims, however, that the property devised and be- queathed by said will of Miss Folsom was, with other property held by the corporation, in excess of the amount which the corporation was authorized to take, receive, or hold. The evidence is not at all clear that this real estate was worth more than $200,000, or that the personal property bequeathed by the will was of a greater value than $200,000, or that the clear annual income of all of the real or personal estate owned by the corporation, after the receipt by it of the devise and bequest contained in the will, would exceed $50,000; but, assuming that such an excess did exist, including the

property received under Miss Folsom's will, that fact would not render the devise or bequest void.

It was held in Re McGraw's Estate, 111 N. Y. 130, 19 N. E. 233, that where a corporation had property in excess of the amount that it was allowed by its charter to receive or hold, a devise or bequest of either real or personal property to such corporation was void, and any property attempted to be devised or bequeathed to such a corporation passed to the next of kin of the testator as property undisposed of by the will. That decision, however, related solely to a case where, at the time of the death of the testator, the devisee or legatee was limited by its charter as to the amount of real or personal property that it could take and hold, and it already held property in excess of the amount to which it was so limited.

The case of Chamberlain v. Chamberlain, 43 N. Y. 431, was a case where a corporation had a right to take and hold property, and where the limit of the property that it might so take and hold had not been reached, but the bequest or devise contained in the will in question vested in the corporation property which, with that before owned by the corporation, exceeded in the aggregate the amount that it was authorized to take and hold. In that case it was held that the corporation could take under the devise or bequest property to the amount to which it was limited, but that it could not take in excess of that amount. The whole devise or bequest, however, was not void. It was void only so far as it vested the corporation with property in excess of the amount that it was authorized by its charter to receive and hold. The title to the property thus vesting in the corporation, subject to a portion of it being devested if it appeared that its value exceeded that which it was authorized to take, a conveyance by the corporation of a portion of the property would vest a good title in the purchaser, where the consideration received for such transfer, with the other property owned by the corporation prior to the receipt of the bequest or devise contained in the will in question, would not exceed the amount that the corporation was entitled to take and hold under the terms of its charter. The right of the heir at law or next of kin of the testator would then clearly be limited to a recovery of the property remaining undisposed of by the corporation to an amount equal to the excess of that which it was authorized to take and hold by its charter. Where the devise or bequest was not void as a whole, but only voidable as to a portion which would be in excess of what the corporation could take, it would seem to be clear that the title to the real property constituting the devise vested in the devisee; and its conveyance of a portion of the property would convey a good title so long as such property so conveyed, together with the property owned by the corporation prior to the time of the taking effect of the will, did not exceed the amount that the corporation was authorized by its charter to receive and take. As there is not the slightest evidence to show that this corporation was not authorized to take and hold property to the value of that conveyed to the defendant, including all property received under Miss Folsom's will which it had conveyed or disposed of prior to that time, in addition to what it owned at the time that the will was admitted to probate,

there would seem to be no doubt but that a good title vested in the grantee of the corporation, and that the court below was correct in holding that the defendant's title to the Twelfth street property was good.

The court below also found that the title tendered by the plaintiff of the Seventh street property was not marketable. There is one objection to the title of the plaintiff to the Seventh street property which we think justifies the defendant in refusing to complete the contract, as we think, upon the evidence before the court, it cannot be said to be a marketable title. The plaintiff's title to this property came through a conveyance of the devisees and heirs at law of one Catherine Donaldson, the owner of this Seventh street property at the time of her death. She died May 14, 1866, leaving a last will and testament, dated July 19, 1848, which was admitted to probate on July 16, 1866. By that will, after directing the payment of her debts and dividing her household furniture between her daughters, she directs her executors to invest and place at interest the sum of $2,000 upon bond and mortgage upon productive real estate, and to apply the interest thereof to the use of her grandson James D. Dusenbury for and during his natural life, with remainder over. She disposes of the residue of her estate as follows: "All the rest, residue, and remainder of my estate, real and personal, I give, devise, and bequeath unto my children William P. Donaldson and Anna Maria Burritt, Adeline Lewis, Eliza Jane Mount, Cornelia M. Lewis, and Catherine Louise Slipper, share and share alike, to have and to hold the same to them, their heirs and assigns." It seems that two of her children named in this devise and bequest, viz. William P. Donaldson and Eliza Jane Mount, died without leaving issue, during the lifetime of the testatrix. It also appeared that another daughter, who died before the will of her mother was made, had been married to one Dusenbury, and the issue of that marriage was a son, whose name was James D. Dusenbury. It appears from the petition presented upon the probate of this will, made by William E. Lewis, an executor, who was also her son-in-law, which was verified May 22, 1866, that James D. Dusenbury was one of the heirs and next of kin of the testator, but that his residence, after diligent search and inquiry, could not be ascertained; that said James D. Dusenbury was one of the children of a deceased child of the testatrix. On the trial there was evidence of one William H. H. Mohr, who married one of the granddaughters of the testatrix, the daughter of Cornelia M. Lewis, in the year 1862, before the death of the testatrix. He testified that this James D. Dusenbury was a first cousin of his wife, and that the last heard of him was some 50 years before the trial; that the witness had never seen him; that he had been away a long time before he (witness) had any knowledge of the family. He testified that he made inquiries as to Dusenbury at the time of the death of the testatrix; that the last that was heard of him was that he was at Horse Head, a place in Chemung county, N. Y., about 20 years prior to Mrs. Donaldson's death. They had knowledge of him up to that time, since which the family have heard nothing from him or of him. The witness further testified that nothing, to his knowledge, had been

heard of James D. Dusenbury by the family since the death of his grandmother. The witness said that he had never heard whether he was married or not, and that he (witness) was in communication with all the other known living members of the family. It further appeared that a search had been made for Dusenbury some time before when the plaintiff acquired title to this property, but no inquiry appears ever to have been made at Horse Head, where Dusenbury was last heard of; and the only inquiry that seems to have been made was by writing to some members of the family in Indiana, and at Hartford, Conn., from whom no information could be obtained. It is claimed by the plaintiff that this devise contained in the will of Catherine Donaldson was to a class, and that thus, upon the death of the two children named in the will, it went to the remaining members of the class, and no part of the estate of the testatrix lapsed or vested in the heirs at law. The rule is well settled that, when the devise creates a tenancy in common, the gift being to several persons by name, the share of the one dying before the testator lapses and vests in the heirs at law. Downing v. Marshall, 23 N. Y. 366. The question resolves itself into one of the intention of the testator, to be considered from the whole will, and any facts proved as to the family of the testator at the time of the making of the will, or the death of the testator, and it is but necessary to cite one or two of the cases upon the subject.

In the case of Hoppock v. Tucker, 59 N. Y. 202, relied on by the plaintiff, the testator divided his residuary estate into six parts, one of which was given in equal proportions, share and share alike, unto John C. Tucker, Hubert Tucker, and William E. Tucker, the children of his deceased daughter, Ann Maria Tucker. One of these died before the testator, and, in determining whether the share of the one dying lapsed, the court said:

"The clause contains a double description, antagonistic in legal meaning. The description by names is a perfect bequest to them as individuals, while the other description as the children of deceased daughter, standing by itself, is a perfect bequest to them as a class. It must be conceded that the clause as it is written, with its double description, free from the influence or control of other portions of the will, would, according to the adjudicated cases, be construed as a personal legacy to each child. The law infers this intent from the specifications of the names, but regards the descriptive portion of the clause as intended for identification."

In Moffett v. Elmendorf, 152 N. Y. 475, 46 N. E. 845, the will was as follows:

"I give and devise to my aunt, Catherine Elwell, and my cousins, Mary S. Elmendorf, John D. Elwell, Joseph S. Elwell, Cornelius A. Elwell, Annie A. Elwell, James H. Elwell, and Sarah E. Elwell (each to take an equal share therein), my lots on the southerly side of Sixtieth street," etc.

The court held that this was not a devise or bequest to a class with the right of survivorship, but that the share of a devisee named who died before the testator lapsed and fell into the residuum, and passed under one of the residuary clauses.

In Savage v. Burnham, 17 N. Y. 561, it was said:

"When a will directs an aggregate fund to be divided amongst individuals by name, share and share alike, the rule seems to be well settled that the inter-

ests of those dying before the testator are deemed to have lapsed. The courts invariably attach great importance to the designation of the devisees severally by name, and to a provision that they shall share the gift in fixed and definite proportions.  *  *  *  When an equality or inequality of shares is prescribed in express words, the language was always held to create the relation of tenants in common."

In this clause of the will in question, considering only the words used by the testatrix, it is quite clear that, from these authorities, the devise was to the children named as tenants in common. The testatrix devises the property unto her children, naming them, share and share alike. These children are the ones in whom the property is to vest, and they are to hold it in equal shares, thus clearly indicating a devise to those named as tenants in common. The only other provision of the will that could be considered as bearing upon this intent of the testatrix is the provision made for James D. Dusenbury by directing that the sum of $2,000 be placed at interest and the income paid to him during his life, and the fact that he is excluded from the residuary clause, and the further fact that the children named in the residuary clause were all the living children of the testatrix when the will was made. From this it could be inferred that the testatrix intended that her children should re-receive her property, and that Dusenbury's interest in it should be limited to the provision made for him. But that is the extent to which any inference as to the intention of the testatrix can be found from these provisions of the will. There is nothing in it to show that she intended that this bequest should go to the survivor of her children, to the exclusion of the descendants of those children dying before her; and yet, if the contention of the plaintiff is correct, the surviving children would take a deceased child's share, and the descendants of those dying before her would have no interest in the property. If the devise was to her children as a class, as there is no provision for the share of the child dying vesting in his or her descendants, we would have to assume that the testatrix intended that, in the event of any child dying leaving descendants, the estate would vest in the survivor, and not in the descendants of the child dying. There is clearly nothing to show such an intention of the testatrix. It is quite probable that the contingency of one of her children dying before her was not considered by the testatrix when the will was drawn, and no change was made because of the general rule that, upon the death of a child leaving descendants, a bequest or devise to such child would not lapse; but it is quite clear that, when the will was made, the testatrix recognized the fact that Dusenbury was living, and was entitled to some provision by the will; and, as he had apparently disappeared, his existence was not considered important or necessary in making a change in the provisions of the will. Upon the whole case, I fail to see any indication of any intention of the testatrix, either by the will itself or by the extrinsic facts proved, to justify us in refusing to give the words used in this clause of the will their ordinary legal significance; and I think we must conclude that the devise was not to a class, but to the individuals; and that upon

the death of the two children of the testatrix during her lifetime, without leaving descendants, the share devised to those two children lapsed, and vested in the testatrix's heirs at law. We cannot say that there is any presumption, upon the facts proved, that James D. Dusenbury was not alive at the time of the death of the testatrix, or that he has not left descendants to inherit, or made some disposition, by will or otherwise, of his interest in this estate. The testatrix has been dead but little over 30 years, and the only testimony is that the husband of a granddaughter of the testatrix, who married a few years prior to the death of the testatrix, had no knowledge as to whether Dusenbury was alive or not, and that the family, so far as he knew, had no such knowledge. There was evidence that he had been located at a particular place within this state at some time not named, but evidently some time prior to the death of the testatrix; but no inquiry had been made at this place where he was last heard from, and nothing was known as to his history since that time. The defendant was entitled to a marketable title, and, upon this evidence, we do not think that this title to the Seventh street property was marketable, or that the defendant should have been compelled to accept it. Having come to the conclusion that the plaintiff's title to the Seventh street house was not marketable for the reason above stated, it is not necessary to express an opinion upon the other objections to his title taken by defendant.

For the reasons stated, I think the judgment was right, and should be affirmed, with costs. All concur.