In the Matter of the Estate of CAESAR WEISSMANN, Deceased.

Surrogate's Court, Kings County, June 7, 1930.

*Barnes, McKenna & Halstead* [*Samuel M. Richardson* of counsel], for Larrie H. Sass and John Wilshear as executors.

*Strongin & Hertz* and *Irwin M. Levy* [*Milton Hertz* of counsel], for petitioner, Adelaide Fleisch.

*Leo Holland,* for Adam Ender, Arthur Ender and Albert Ender.

*Henry Weismann,* for Herman Weissmann, Robert Weissmann, Caesar Weissmann, Pauline Carter and Clara Hirschberg.

*Spence, Hopkins & Walser* [*Kenneth E. Walser, Walter H. Liebman* and *Paul Van Anda* of counsel], for Carrie Weissmann, widow of testator.

*Joseph A. Kennedy,* special guardian for Frederick Ender and Anna Ender, infant heirs at law and next of kin.

WINGATE, S. It is indeed rare in a proceeding involving the construction of a will that the court is favored by the opulence of citations presented in this case. Unfortunately, much of the diligence of counsel in the search for testamentary phraseology resembling that in the will at bar, is inevitably lost labor, since, as has been repeatedly pointed out by all courts passing upon these questions, " the citation of authorities is of very little use in cases of this kind upon the fundamental principles of the law of wills. All the authorities cited are a mere repetition of those rules. The difference in the opinions is in their application to varying facts." (*Matter of Durand,* 250 N. Y. 45, 53.) As this court has frequently had occasion to note, there is probably no branch of the law upon which precedents are of less value than in questions involving testamentary construction (*Matter of Rossiter,* 134 Misc. 837, 839; affd., 229 App. Div. 730), since " * * * slight variations of phrase * * * or differences in arrangement may lead us to opposite results." (*Matter of Bump,* 234 N. Y. 60, 63.) The judicial determination of questions of testamentary construction more closely resembles the practice of tribunals in European continental countries than that customarily in vogue in common-law jurisdictions, in that decision, in the last analysis, is based almost solely on fundamental principles with scant attention to precedents. This is not due to any reversal of the common-law system, but because almost never is any prior adjudication a pertinent precedent for decision respecting the meaning of the phraseology at issue, for the reason that the wording and arrangement of no two wills is the same, or, as it has been tersely put, '' no will has a brother.''

Reverting to the primary principles to which resort must be had in this and every other similar case, we must bear in mind that '' the aim of the court is to determine the intention of the testator * * * and if such intention can be discovered it is paramount * * * and will not be affected by any rule of construction * * * that in determining such intention, courts are limited to the words which testator has himself used in the will * * *; but if there is any ambiguity, that construction should be adopted which will best carry testator's intention into effect." (*Matter of Rossiter,* 134 Misc. 837, 839; affd., 229 App. Div. 730.)

With this preliminary survey, the disputed document will now be considered. It is extremely brief, and, omitting introductory and in testimonium clauses, reads as follows:

" *First.* I desire that all my just debts and funeral expenses be paid.

" *Second.* I give, devise and bequeath all of my estate, real, personal or mixed, wheresoever situate, to be transferred unto the

' Estate of Caesar Weissmann ', and I desire that no part or portion of said estate be given, paid or transferred unto Adelaide Fleisch, daughter of my deceased sister, Alvine Haagen.

" *Third.* I desire that the business, property and all other assets of the Weissmann Shoe Company, Incorporated, be left intact and under the control and management of the officers and directors of said company.

"*Fourth.* I hereby nominate, constitute and appoint John Wilshear and Larrie H. Sass as executors of this my last will and testament, to serve without bond."

This will is dated June 20, 1925, is written by pen on part of a sheet of accountant's figuring paper, and is apparently in the handwriting of George Zahn, one of the subscribing witnesses. Testator died on January 8, 1930, and the will was admitted to probate in this court on the following February fourteenth.

Construction is prayed as to the effect of item " Second."

On June third, the date of the hearing, a stipulation was filed, signed by all parties, to the following effect: That testator was born August 27, 1853; that he organized and was at the time of his death president of the corporation mentioned in item " Third;" that during his life he accumulated considerable money and at his death left an estate in excess of $500,000; that his relatives at the time of the execution of his will and at the time of death were (a) Carrie Weissmann, his wife; (b) Adam Ender and John Ender, sons of a deceased sister, John dying in 1929 leaving four children; (c) Robert H. Weissmann, a brother; (d) Gustave Weissmann, a brother, who died in 1928 leaving three children; (e) Herman Weissmann, a brother; (f) Adelaide Fleisch, daughter of a deceased sister, Alvine Haagen.

It was further stipulated:

" 5. That there is no corporate entity in existence known as ' Estate of Caesar Weissmann.'

" 6. By a decree of the Surrogate's Court, Kings County, dated December 17, 1924, the Testator was appointed administrator of the goods and chattels of his sister, Adelgunde Weissmann, who died intestate, a resident of the County of Kings, in the month of October, 1924; and the said Testator was serving as such administrator throughout the year 1925."

Adverting to the phraseology of paragraph " Second," all parties agree — indeed, a contrary position would be untenable to the point of being ridiculous — that testator's most clearly expressed direction was that his niece, Adelaide Fleisch, should receive no portion of his estate. The petitioner's contention, in brief, however, is that this negative desire must fail of fulfillment because

testator is claimed to have contravened the rule of law that a natural distributee may not be deprived of an inheritance except where the portion which would go to such distributee on intestacy has been validly given to another. It is unquestionably established law in this State that a mere negative direction without positive gift over will not accomplish disinheritance. (*Gallagher* v. *Crooks*, 132 N. Y. 338, 342; *Pomroy* v. *Hincks*, 180 id. 73, 75; *Matter of Trumble*, 199 id. 454, 465.) While this rule is undoubted, as a result of determinations which are here binding, this court cannot but feel that it is in flat contradiction of one of the most fundamental rules of testamentary construction which states that the primary duty of the court is to effectuate the expressed wishes of the testator. The rule invalidating a mere disinheritance without more, had its inception in early English law (*Johnson* v. *Johnson*, 4 Beav. 318; *Fitch* v. *Weber*, 6 Hare, 145) and came to this country by inheritance (*Haxtun* v. *Corse*, 2 Barb. Ch. 506), but the English conception of the semi-vested rights of a natural heir in his ancestor's estate has never possessed the cogency here which was attached to it in the mother country, where for centuries primogeniture and estates tail were recognized and favored. The whole theory underlying statutes of distribution is that when a man dies without having designated the persons to whom he wishes his wordly goods to pass, the common experience of mankind indicates that he would wish them to go to those nearest and presumably dearest by reason of ties of blood or marriage; that death having made the personal expression of his wishes impossible, the common experience of mankind will be translated into action as being what he would probably direct were it possible for him to speak. Where, however, the decedent has spoken, the whole fundamental basis for such presumption fails to the extent that it runs counter to the spoken word; wherefore the result of this rule is to do, deliberately, the very thing with testator's property which he solemnly inhibited. If it be true that " so far as possible we must follow what was plainly the intention of the " testator (*Matter of Buttner*, 243 N. Y. 1, 6), it would seem unquestionably to follow that a clearly expressed negative intention is entitled to equal weight with a positive one; furthermore, that where such negative indication of intention is the only one expressed, it must be apparent that it constituted an exceptionally strong testamentary wish of paramount importance to the decedent, which should, to the extent of its terms, prevail over the artificial statutory presumption of a desire for distribution based upon relationship in the absence of direction.

While these considerations might well cause the Court of Appeals

to reconsider its determinations based on historical grounds which were never potent in this country, they furnish no basis for a decision by this court in contravention of the rule enunciated in the controlling cases cited.

The sole question presented, therefore, is whether this testator by express words or natural implication indicated the desired objects of his bounty. It is contended by the respondents that he did this by the direction for transfer " unto the ' Estate of Caesar Weissmann,' " while the petitioner denies it.

In the opinion of the court, three things are noteworthy in the construction of item " Second." The first is the thrice used word " estate," the first and third uses being written with small initial letters, while the second is capitalized; the second is that in the designation of the transferee of the property, the words " Estate of Caesar Weissmann " are inclosed within quotation marks; and the third is the double use of the phrase " transferred unto."

It is entirely evident that on the first and third occasions of the use of the word " estate " the testator referred to the property of which he should die seized and possessed, while it is equally evident, both from the context as well as from the capitalization and the quotation marks, that his meaning in the second use was something entirely different. Substituting the synonymous word " property " for " estate " in the first and third uses and eliminating words superfluous in this consideration, we have the following as the equivalent of item " Second:" " I give  *  *  *  all of my property  *  *  *  to be transferred unto the ' Estate of Caesar Weissmann ' and I desire that no part  *  *  *  of said property be given, paid or transferred unto Adelaide Fleisch  *  *  *."

The respective counsel have apparently combed the decisions of all jurisdictions for judicial constructions of documentary references to such phrases as " Estate of Caesar Weissmann." The petitioner attaches considerable importance to certain determinations in California, Kansas and Illinois, in which courts of these States construed such phrases in cases coming before them. These cases might possibly furnish decisive authority on the matter if it could be demonstrated that the testator was familiar with them, but since the present inquiry is directed to what this particular testator had in mind in the use of the phrase and since even our courts do not take judicial notice of the decisions of other States, it hardly requires extensive demonstration that this Brooklyn shoe manufacturer did not phrase his will with the definitions of the California or Kansas decisions in mind.

In the opinion of the court, the dominent clue to what testator

intended by the phrase is found in the repeated use of the words " transferred unto," particularly in view of the conjunction of this phrase in its second use with the word " given," which is apparently used in a synonymous sense. Both phrases refer to a gift — the first being a positive gift; the second, the elimination of *an individual* from the recipient or recipients of the previous positive gift.

It must follow, therefore, as an algebraic syllogism, that the original positive gift is intended to pass to an aggregate number of individuals, from whose number one, namely, Adelaide Fleisch, is removed by the subsequent clause. That the individuals intended are those who, in case of intestacy, would share in the " Estate of Caesar Weissmann " would seem particularly obvious when we view the matter from the standpoint of the testator at the time the will was executed. According to the stipulation, he was, on the date the will was drawn and had for over six months prior thereto, been acting as the administrator of his deceased sister. He is thus shown to have had intestate succession clearly in mind, and it seems unquestionable to the court that it was such intestate succession which he had in mind when he used the disputed phrase.

Were it necessary to do so, the court would be disposed to take judicial notice of the fact that, in common parlance, " Estate of John Doe " connotes a fiduciary relationship resulting from death, in favor of the proper legal distributees of a decedent; but such course is unnecessary since authoritative determinations to that effect are to be found in this State.

In *Clinton* v. *Hope Insurance Co.* (45 N. Y. 454) one of the questions adjudicated concerned the construction of an insurance policy made payable to the " Estate of Daniel Ross." The court says (at p. 462): " The words used in this policy were intended to designate the persons holding the legal title, and to speak of the property left by a deceased person, including the real property, especially before final settlement of his affairs, as his estate, if not an accurate, is not an unusual designation.

" We are of opinion that the interests, both of the administratrix and of the heirs, in the insured property were covered by this policy. (1 Phil. on Ins., 106; *Higginson* v. *Dale*, 12 Mass. 96.) "

An analogous result was attained in *Weed* v. *L. & L. Fire Insurance Co.* (116 N. Y. 106), where the policy was payable to the " Estate of O. Richards," the court saying (at p. 115): " We must assume that he intended to make a valid contract; and supposing, from his information, that Richards had died owning the property, he must have intended by the use of the word ' estate ' to describe such person as had, upon Richards' death, succeeded to his title.

* * * Under these circumstances, the ordinary and accepted meaning of the term used, as applied to such property, would be to designate those succeeding to Richards' title. This meaning, I think, must be regarded as the one intended by the parties."

The propriety of this construction, in the case at bar, is especially emphasized by the inclusion of the disputed phrase in quotation marks, demonstrating testator's conception of " Estate of Caesar Weissmann " as a semi-entity similar to a partnership.

The true interpretation of item " Second " in the opinion of the court is that testator gave all of his property, real and personal, to those individuals who would have been entitled to it on intestacy, except that the share which would under such circumstances have been receivable by Adelaide Fleisch is given to the others in like manner as if she were dead. (*Nester* v. *Nester*, 68 Misc. 207.)

While, in the opinion of the court, this result is abundantly self-sustaining, it is still further strengthened by the fundamental rule of construction that " intestacy will be avoided if at all possible." (*Matter of McGowan*, 134 Misc. 409, 411; affd., 228 App. Div. 779; affd., 254 N. Y. ——.)

That such was the real intention of the testator was not seriously disputed on the argument, the chief contention being that the testator had failed properly to pronounce the " open sesame " without which the judicial gates to testate distribution would not open.

Under these circumstances, even were testator's phraseology not reasonably accurate for the purpose, the same result should be attained under the familiar rule enunciated with especial clearness in *Masterson* v. *Townshend* (123 N. Y. 458, at 462): " What the testator has imperfectly done, by way of expression, is effectuated by the application of well-known legal rules. In the construction of a testamentary disposition, where the language is unskillful, or inaccurate, but the intent can be clearly collected from the writing, it is the duty of the court to give effect to that intent, subject only to the proviso that no rule of law is thereby violated."

The court holds, therefore, that the property of the decedent is properly distributable as if upon intestacy to the individuals and classes designated " a " to " e " in the summary of the stipulation, above given.

Proceed accordingly.