In the Matter of the Estate of JAMES A. McCAFFERTY, Deceased.

Surrogate's Court, Kings County, January 4, 1932.

*Fitzgerald, Stapleton & Mahon,* for the executors.

*Andrew Eckel,* for Mary Ferguson and others.

*Robert M. McCormick,* for Isabel M. Dorney, as general guardian of Isabel R. McCafferty and others.

*Cullen & Dykman,* for Kathryn P. Kitching.

WINGATE, S. In spite of the frequent judicial statements that precedents possess negligible value in the determination of questions of testamentary construction (*Matter of Durand,* 250 N. Y. 45, 53; *Matter of Rossiter,* 134 Misc. 837, 839; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissmann,* 137 Misc. 113, 114; affd., 232 App. Div. 698; leave to appeal to Court of Appeals denied, Id. 773, and by Court of Appeals, N. Y. L. J. April 1, 1931, p. 10; *Matter of Storey,* 134 Misc. 791, 796; *Matter of Quinby,* Id. 396, 401; *Matter of Grefe,* 140 id. 134, 137), the arguments of counsel in such proceedings continue to lay great stress upon cases

previously decided, and the courts, in a large proportion of instances, still base their determinations thereon. This apparent paradox is, however, due to a lack of differentiation of the two diverse offices performed by a court in any determination involving the meaning and effect of a will, and of the two varieties of decisions which are found in the books involving questions of construction. The explanation lies in the fact that a proceeding for the construction of a will really involves two separate and distinct processes, which, for want of better terminology, may be designated as, *first*, the function of interpretation of the document; and, *second*, that of adjudication of its legal effect.

The former act involves merely a decision as to what the testator intended by the use of the language employed in the instrument. This must be resolved by an analysis of the particular words employed therein (*Matter of Halbert*, 141 Misc. 181, 182; *Matter of Kirkman*, 134 id. 527, 528; *Matter of Kelly*, Id. 399, 401; *Matter of Weissmann*, 137 id. 113, 114; affd., 232 App. Div. 698; *Matter of Tuozzolo*, 141 Misc. 251, 252, 253; *Matter of Shumway*, 138 id. 429, 434; *Matter of Ryan*, 136 id. 261, 264; *Matter of Durand*, 250 N. Y. 45, 54), when read in the light of the pertinent surrounding circumstances at the time the document was executed. (*Matter of Smith*, 254 N. Y. 283, 289; *Matter of Patterson*, 139 Misc. 872, 875; *Matter of Shumway*, 138 id. 429, 432.) Only when testator's intention has been ascertained is the stage set for the second act in the construction process, namely, that of adjudication, which consists of the application of recognized rules of law to the dispositive directions, and involves a decision as to how far applicable legal principles will permit effectuation of the devolution desired and expressly or impliedly directed by him.

This distinction of functions has received occasional judicial recognition and is stated with especial aptness in *Herzog* v. *Title Guarantee & Trust Co.* (177 N. Y. 86, at p. 91): "From them [the testamentary instruments] the intention of the testator must be ascertained. The intent to be discovered is not whether he intended to make a valid disposition of his estate, but what provisions he in fact intended to make. When that is found, it is for the court to determine whether such intended provisions are valid or otherwise. (*Colton* v. *Fox*, 67 N. Y. 348, 351.)"

At page 92: "The duty of the court is not to make a new will or codicil to carry out some supposed but undisclosed purpose, but to ascertain what the testator actually intended by the language employed by him when properly interpreted, and then to determine whether such intended provisions are valid or otherwise. The duty of the court is to interpret, not to construct; to construe the will

and codicil, not to make new ones. (*Tilden* v. *Green*, 130 N. Y. 29, 51.) "

In the performance of the office of adjudicating the legality of testator's directions for the disposal of his property, precedents are of the utmost importance. On the primary question of what disposition the testator actually intended, in other words, in the judicial act of the interpretation of the meaning of the testamentary instrument, former decisions of the courts have, however, substantially no value as guides, since, as Judge WERNER pertinently remarked in *Matter of King* (200 N. Y. 189, 192): " ' No will has a twin brother.' " No two wills are similarly phrased in all particulars, and since every word employed is potentially important as shedding possible light upon what the testator actually had in mind at the time of the execution of the document (*Matter of Gorra*, 135 Misc. 93, 97; *Matter of Gargiulo*, 138 id. 90, 97; *Matter of Sheffer*, 139 id. 519, 520), it is fundamentally inconceivable that a decision respecting intent, as disclosed in one instrument, could have any proximate bearing on the purpose envisaged in another. Not only is it incredible that the wills of any two individuals should be identical in verbiage, but the circumstances surrounding each testator are inevitably essentially dissimilar, and since these must be taken into consideration in reaching a conclusion as to what his wishes envisaged, it is beyond the range of possibility that the pertinent facts on which the decision of testamentary intent must be based can, in any two wills, sufficiently resemble each other as to warrant the basing of interpretation of the meaning of one, on a decision respecting the connotation of another. It may, therefore, be said that only where it can be demonstrated that the testamentary instrument submitted is precisely identical with one previously adjudicated, and that the circumstances of the two testators were in all respects alike, can a previous decision be a governing precedent in a question of interpretation raised in a later one.

On questions of interpretation the sole aim of the court is to decide what the testator desired. In the act of adjudication this is entirely immaterial, legal rules alone governing the determination.

Another frequently encountered stumbling block in this connection is concealed in the phrase " the intention of the testator." This does not refer to what he might have desired to accomplish in the light of the eventualities which have transpired since the execution of the will. The only intent relevant or important is as to the disposition of his property which the testator had in mind at the precise moment of his signature of the will which

is the subject-matter of the construction. Since no one is endowed with prophetic vision it must be obvious that subsequently transpiring events can throw no light whatsoever upon this inquiry and this point has frequently been stressed.

In *Morris* v. *Sickly* (133 N. Y. 456) the Court of Appeals says (at p. 459): " Clearly, circumstances occurring long after the execution of a will could not have been within the contemplation of the testator, and could, therefore, throw no light upon the meaning of language which he then used. While a will is in some sense ambulatory as to the objects and subjects with which it deals, yet it is not ambulatory as to the meaning of the language used by the testator and the intention and purpose which controlled the disposition of his property. That intention and purpose must be found to exist at the time of the execution of the will, and cannot be varied or changed by any after-occurring events." (See, also, *Matter of Smallman*, 138 Misc. 889, 896; *Matter of Lilienthal*, 139 id. 225, 230; *Matter of Kirkman*, 134 id. 527, 529; *Matter of Gargiulo*, 138 id. 90, 99; *Matter of Tuozzolo*, 141 id. 251, 253; *Matter of Sheffer*, 139 id. 519, 522.)

The decision of the court in questions of interpretation, therefore, is based solely on two facts, namely, the testamentary language used and the circumstances surrounding the use at the time it was employed. As in other cases, inferences may and usually must, be drawn by the court frcm these demonstrated facts, and these, as in other cases, are founded upon probabilities, based on human experience.

With these introductory observations the testamentary document at bar will be summarized. In the first item testator directed payment of his debts and funeral expenses, continuing as follows:

" *Second.* I give and bequeath to each of my grandchildren who survive me the sum of Three Thousand ($3,000) Dollars.

" *Third.* All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate and of which I may die seized or possessed, or to which I may be entitled at the time of my decease, I give, devise and bequeath in equal shares to my children, Loreta McCafferty, Catherine Stubbert, Floıence Meyer and James R. McCafferty."

In the fourth item he gave his executors a general power of sale. In the fifth he appointed as executor and executrices the same individuals mentioned in the third item. The sixth item revoked former wills.

At the time the will was drawn, testator had four living children, they being the same individuals who were mentioned by name in its third and fifth items. Two children had predeceased the

making of the will. At that time, also, he had eleven living grand-children, four of whom were children of living children, and seven, children of deceased children.

The concrete question presented for adjudication is as to whether the legacies to his children, nominatim, in item third were gifts to these children individually or to testator's children as a class. Stated in another way, the problem propounded is whether these named children are constituted joint tenants or tenants in common of the residue of the estate by this residuary gift.

While, on the principles hereinbefore discussed, it must be obvious that the manner in which the particular question of inter-pretation here presented is raised is immaterial on the deter-mination of what testator meant by the words employed at the time he wrote them, it may be noted that Loreta McCafferty pre-deceased the testator and that Catherine Stubbert survived him, but died shortly after his death.

From the portions of the will quoted, it is apparent that the testator did not expressly state the manner in which he desired his property to pass, in the event that any of his named children predeceased him. The question determinable, therefore, is whether any inference can be drawn from the language of the will or the circumstances surrounding the testator at the time he executed it, which indicates that upon the happening of the eventualities which have transpired, he had an active desire that the property which he then beneficially dedicated to the one predeceasing him should pass in a particular manner.

While the term " intention of the testator " is frequently employed in decisions respecting testamentary construction, the precise limits of the phrase are seldom defined. In a proceeding like the present the precise meaning of the term is of extreme pertinence. The Standard Dictionary defines " intention " as " a settled direction of the mind toward the accomplishment of a particular act." (*Matter of Mann,* 138 Misc. 42, 52.) Obviously, if this definition is correct, a prerequisite to a finding of an intention requires a demonstration of an affirmative mental act or state of the testator in respect to the attainment of a specific object and no intent can be found to exist where it does not appear that the testator gave any thought to the matter in question. Differently stated, an intent respecting the devolution of property cannot be inferred as existing at a particular time, merely because subsequent events indicate that the testator would have had a particular desire on the subject had he possessed prophetic prevision sufficient to enable him to anticipate that such subsequently occurring event would transpire.

The arguments of those parties to the present proceeding who contend that the gift in the third item of the will was to testator's then living children as joint tenants or as a class, are based upon three grounds: *First*, upon the so-called presumption against intestacy; *second*, upon the theory that testator, having made a specific class gift of $3,000 to each of his grandchildren, thereby evinced an active intention that nothing in excess of such sum should in any event pass to a grandchild; and *third*, upon the authority of *Hoppock* v. *Tucker* (59 N. Y. 202). These contentions will be reviewed in order.

That the courts have frequently referred to the "presumption against intestacy" is unquestionable, but that much of the language used in respect to this doctrine is inapplicable or misleading in the case at bar seems equally undeniable. In ultimate essence this so-called presumption is really not a presumption at all in the exact use of the term, but is merely an inference based on the knowledge of the courts of the usual intention of mankind. (See general discussion of presumptions and inferences in *Matter of Callahan*, 142 Misc. 28, 32–36.) The doctrine refers to the usual mental attitude of a testator at the time of the execution of a testamentary document, and is merely to the effect that human experience indicates it to be improbable that any man who will take the trouble to prepare and formally execute a will, does not, in the ordinary case, intend thereby to make a complete disposition of all of his assets. Like all other inferences employed in the interpretation of written instruments, it looks merely to the mental attitude of the testator at the time the will is executed. This thought is indicated by the language of the Court of Appeals in the early case of *DuBois* v. *Ray* (35 N. Y. 162, at p. 165): "It is to be presumed that the testator intended to make a legal disposition of his estate, and not a void or illegal one. Intestacy is what he never intended or contemplated."

That the doctrine is limited to a case in which testator's language is capable of more than one explanation is indicated by the words of the Court of Appeals in *Matter of Disney* (190 N. Y. 128, 131): "When the language used is as clear and unambiguous as it is in this case, it does not appear to me that we should evade its meaning by an endeavor to spell out a different intent on the part of the testator by resorting to the rule, to the effect that the testator did not intend to die intestate, especially when that rule has many exceptions and is only occasionally followed." (See, also, *Matter of McGowan*, 134 Misc. 409, 411; affd., 228 App. Div. 779; affd., 254 N. Y. 513; *Matter of Tamargo*, 220 id. 225, 232.)

The *McGowan* case furnishes an excellent example of the true

application of the so-called presumption against intestacy. The question there presented was whether or not the testator intended to include his real estate, which otherwise would have passed as intestate property, in the general disposition effected by his will. The inference against intestacy was applied.

Such a situation differs materially from that presented by the facts in the case at bar. Here the testator, by his will, made a clear and complete disposition of all property of which he was seized and possessed. Had all of the surrounding conditions continued as they then were, there would have been no possibility of intestacy either in whole or in part. The partial intestacy for which certain parties to the proceeding contend arises wholly by reason of events which transpired later. Since, however, such future events could not have been foreseen by him, and he made no direct provision against such a contingency, no inference can be drawn that the directions included in the will were made in the light of an active intent to guard against an intestacy which might result from a change of circumstances arising from such unanticipated future events. Wherefore the inference against intestacy is inapplicable to the facts of the case.

Turning now to the second argument that the gift of $3,000 to each grandchild in the second item of the will indicated an intention on the part of testator that his grandchildren should not benefit by any greater sum, it would seem that this was rebuttable on two different grounds. Obviously, in legal contemplation, the testator intended the natural consequences of his acts in the disposition of his property which included the application of the pertinent rules of law. By the language which he employed in the gift to Catherine Stubbert, plus the rule of law enacted in section 29 of the Decedent Estate Law (as amd. by Laws of 1912, chap. 384), Kathryn P. Kitching, one of the testator's grandchildren, has become entitled to receive not only her $3,000 legacy as a granchild but also the gift under the third item of the will to her mother, who survived the testator, but has since died. If then the will of the testator were clear to the effect that all rules of law to the contrary notwithstanding, testator's grandchildren should be limited to the benefits conferred in the second item of the will, it might be difficult to explain why all parties acquiesce in the conferring of this additional benefit upon this particular respondent.

In the opinion of the court, however, the argument that the gifts to grandchildren in the second item necessarily raise an inference of testator's intention that they should not receive any additional

benefits, would be of equal validity if advanced in support of the opposing contention.

Since the will at bar has been duly admitted to probate, it is *res adjudicata* as against all parties to this proceeding, that the testator possessed testamentary capacity. One of the primary ingredients of this mental state is " the possession of enough mentality by a testator to understand and appreciate the nature and extent of his property; to know the relation he bears to those who would naturally be the objects of his bounty, and to know and understand what he is doing when he makes a will, *i. e.*, to understand the nature of the transaction." (*Matter of Meade*, 200 App. Div. 346, 350.)

In preparing his will a testator possessing the requisite mental capacity to perform a valid testamentary act would naturally estimate the total extent of his property and deduct therefrom a sum for debts and administration expenses in order to arrive at his probable net estate. He would then provide for its distribution among those whom he wished to benefit. If, as contended by those advancing the argument under consideration, his children were the chief objects of his bounty, he would naturally first determine the sum which he desired each of such children to receive and would draw his will accordingly. Thus, if he estimated his gross estate at $1,000,000, and his debts and the administration expenses of his estate at $47,000, this would leave a net estate for distribution of $953,000. If he further desired that each child should receive the sum of $230,000, this would make a total of gifts to his children of $920,000, leaving a balance of $33,000. Since he had eleven grandchildren whom he also wished to remember, this would give legacies of $3,000 to each grandchild. Viewing the matter in this light, and it is believed to be equal in logic to the opposing view, his active intention as evidenced by the will was that each child should have the precise share in his estate indicated by the provision which he then made, based on the probable net size of his estate. The result, however, would be an active presumed intent on his part that in the event of the predecease of any child, the other children should not exclusively benefit by the lapsed legacy, since on the supposition advanced, governed by the facts existing at the time he had concluded that the proper sum to be utilized in benefiting each of the surviving children was approximately $230,000.

The apparent fallacy in both arguments lies in the fact that no active intent on the part of the testator in either direction is discernible from the terms of the will, construed in the light of the circumstances then surrounding him.

The third argument advanced is, as noted, based on the authority

of the *Hoppock* case. As already observed, since this decision is cited on a question of interpretation, it would, in the ordinary case, be entitled to scant consideration except so far as it purported to state general basic principles of determination. It is, for obvious reason, not quoted for this purpose, but as an authority on the interpretation of the facts of the will. The only general statement of law which it contains is found on page 208 and is adverse to the position for which the case itself is cited. This statement is on the general subject of the inference to be drawn from a gift to individuals nominatim. The opinion there reads: " It must be conceded that the clause as it is written, with its double description free from the influence or control of other portions of the will, would, according to the adjudicated cases, be construed as a personal legacy to each child. (*Ashling* v. *Knowles*, 3 Drewry, 593; *Vinn* v. *Francis*, 2 Cox, 190; *Denn* v. *Gaskin*, Cowp. 657; *Bain* v. *Lescher*, 11 Sim. 397.)

" The law infers this intent from the specification of names, and regards the descriptive portion of the clause as intended for identification."

While a differing result was attained in the decision, on the basis of all the facts of the case, the court expressly stated that its conclusion was reached " with some hesitation." In view of the observations of the Court of Appeals in *Matter of King* (200 N. Y. 189, at p. 197) on the scope of the decision and the even tenor of determinations elsewhere found respecting the cogency of the inference of a personal gift arising from the express naming of a legatee, this court would share the hesitation voiced in the *Hoppock* case in reaching a similar result in the case at bar.

Approach to a positive decision of the relation created in the third item of the instant will may be had either from the standpoint, *first*, of whether the gift is to the named individuals as joint tenants or tenants in common; and *second*, whether it is a gift to individuals or a gift to a class.

Section 66 of the Real Property Law provides: " Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy."

In this connection the Court of Appeals in *Matter of Kimberly* (150 N. Y. 90, 93) determined that no inference could be drawn that a bequest of the nature here under consideration was a gift to a class, but that it constituted the legatees tenants in common by reason of the operation of the statute. (See, also, *Downing* v. *Marshall*, 23 N. Y. 366, 373.)

The substantially uniform holding of decisions for at least the last three-quarters of a century has been to determine that a gift

to named individuals, although also designated by a class description, is a gift to the individuals and not to a class.

At the hazard of making this opinion fall within Chief Judge Cardozo's classification of tonsorial and agglutinative (Law and Literature, by Chief Judge Cardozo, p. 31), certain excerpts from Judge Werner's illuminating opinion in *Matter of King* (200 N. Y. 189) will be quoted, as much for their clarity of expression as for their especial pertinency to the problem presently determinable. He says (at p. 193): "A gift to a class has been defined as ' a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons.' (1 Jarman on Wills [6th ed.], *232.) This definition has been approved by this court in *Matter of Kimberly* (150 N. Y. 90) and in other later cases.

" The exact converse of this definition is well stated by Vice-Chancellor Kindersley in the English case of *Cruse* v. *Nowell* (4 Drewry, 217): ' If there is a bequest to certain persons *nominatim*, or so described as to be fixed at the time of the gift, so that there can be no fluctuation, then, if one of them dies in the lifetime of the testator, his share lapses.'

" These two antithetical definitions clearly mark, the line which must be followed in construing the will now before the court. If the gift were to the nephews and nieces of the deceased husband of the testatrix generally, without designation, restriction or limitation, it would be a gift to a class, because the ultimate number of the beneficiaries would have remained uncertain and incapable of ascertainment until the death of the testatrix. In that event the survivors would, of course, represent the class and take the whole gift. But that, as we have seen, is not this case. The gift of the testatrix was not ' to a body of persons uncertain in number at the time of the gift, to be ascertained at some future time,' but to certain person ' so described as to be fixed at the time of the gift.' The bequest was to the nephews and nieces of the deceased husband of the testatrix *who were living at the time of his death.* That was as distinct a designation of the several beneficiaries as though they had been described *nominatim.* It was as though the testatrix had named nine persons and had added, ' I give to these nine nephews and nieces of my late husband, who were living at the time of his death, the proceeds of my New York house, share and share alike.' There can be no doubt, we think, that this was a gift to designated persons in being at a specified time which antedated the death of the testatrix, and that there was a lapse of the shares

of those who did not survive her." (See, also, *Matter of Russell*, 168 N. Y. 169, 176; *Herzog* v. *Title Guarantee & Trust Co.*, 177 id. 86, 97; *Langley* v. *Westchester Trust Co.*, 180 id. 326, 329; *Hornberger* v. *Miller*, 28 App. Div. 199, 207; affd., 163 N. Y. 578; *Matter of Pearsall*, 91 Misc. 212, 215; *Matter of Barrett*, 63 id. 484, 488; affd., 132 App. Div. 134; *Matter of Young*, 133 Misc. 454, 456.) An excerpt from page 484 of the opinion in *Moffett* v. *Elmendorf* (152 N. Y. 475) is also particularly illuminating on the subject. The court there says: " While the mere fact that part of the persons composing a class are named is not controlling, when all are named, each by his or her name in full, and an equal share is given to each, the presumption is that they are to take in their individual and not in their collective capacity, although this may be rebutted by other parts of the will showing a different intention, which, as we have seen, does not appear in the will in question."

As a result, it is apparent that if the matter be viewed from the standpoint of joint tenancy or tenancy in common, the latter relation must be held to have been here constituted, since the holding was not " expressly declared to be a joint tenancy." (Real Prop. Law, § 66; *Matter of Kimberly, supra*.) If the question be approached from the angle of a gift to a class or a gift to individuals, there is an extremely strong inference to be drawn from the language used, that an individual gift was intended. There is nothing either in any other portion of the will or in the circumstances surrounding the testator at the time he executed it, to rebut this inference. Indeed the balance of the will strengthens it, since the gift to a class in the second item demonstrates testator's familiarity with the apt method of conferring such a benefit and creates an additional inference that the gift to individuals in the succeeding paragraph was deliberate. (*Moffett* v. *Elmendorf, supra*, at p. 483.)

Having reached this point, the rule noted in *Savage* v. *Burnham* (17 N. Y. 561, at p. 575) becomes applicable: " When a will directs an aggregate fund to be divided amongst individuals by name, share and share alike, the rule seems to be well settled that the interests of those dying before the testator are deemed to have lapsed."

It follows that since Loreta McCafferty predeceased the testator, the gift provided for her, amounting to one-quarter of the residuary estate, lapsed. As this was a gift of a part of the residue of the estate, it must pass as intestate property. (*Matter of Hartfield*, 139 Misc. 214, 217, 218, and cases cited.)

Proceed accordingly.