In the Matter of the Estate of JOSEPH MEHLER, Deceased.

Surrogate's Court, Kings County, March 14, 1932.

*Robert W. Barth,* for the residuary legatees.

*Edwin C. Morsch,* for the executors.

*Hellinger & Reichart* [*Emanuel H. Reichart* and *George I. Melter* of counsel], petitioners in person.

*Valentine & Chichester,* for Elizabeth Gaynor.

*Nathaniel Seligman,* for the respondent.

WINGATE, S. Although statements of alleged facts in briefs, not contained in the record, are inadmissible for any purpose whatsoever, and cannot be considered by the court in reaching an adjudication (*Matter of Larsen,* 137 Misc. 271, 272); and further, despite the fact that the only relevant intention of a testator in construing his will is that which exists at the time the document was executed (*Matter of McCafferty,* 142 Misc. 371, 372; *Matter of Sheffer,* 139 id. 519, 522; *Matter of Lilienthal,* Id. 225, 230; *Matter of Smallman,* 138 id. 889, 896; *Matter of Gargiulo,* Id. 90, 91; *Matter of Kirkman,* 134 id. 527, 539), upon which subject any after-occurring events can obviously shed no light (*Matter of Smith,* 254 N. Y. 283, 289; *Matter of Patterson,* 139 Misc. 872, 875; *Matter of Shumway,* 138 id. 429, 432), a large portion of the efforts of counsel in this proceeding has been directed to an attempt to demonstrate that certain unproved events stated to have transpired subsequent to the presentation of the will for probate, were such that the testator must have desired the construction for which they contend.

The only facts relevant or pertinent in the determination requested from the court, or upon which such decision can be based, are those contained in Schedule G of the accounts of the executors and in the will itself.

On October 10, 1925, Andrew Mehler and his brother, Joseph, executed a mutual will. The survivor, Joseph, died on May 11, 1930, and the testamentary document was admitted to probate on January 17, 1931.

In its 3d and 5th items provision was made for one Mary Meyer, who, according to the statements in the will itself, had been a faithful housekeeper to the testators for forty years at the date the will was executed.

The chief questions upon which construction of the instrument is desired relate to the benefits intended for her; but similar issues are raised respecting the rights of testators' sister, Lizzie Gaynor.

The pertinent portions of the document are contained in the 3d, 5th and 13th items, which read as follows:

" *Third.* Upon our simultaneous deaths or upon the death of the survivor in the event that the survivor has not made a new Will we hereby give, devise and bequeath unto Mary Meyer who has been our housekeeper and faithful friend since 1885, the sum of ten thousand ($10,000) Dollars to be hers absolutely and forever, and in addition thereto *we* hereby give and *bequeath to her the sum of two hundred and fifty ($250) Dollars per month during her life time to be paid to her on the 1st day of each month in advance to start immediately upon our simultaneous deaths or upon the death of the survivor. Such sum to be paid out of the trust fund hereinafter created for that purpose* and we do further direct that the said Mary Meyer shall have the use of the apartment now occupied by us in premises 908 Madison Street, Brooklyn, N. Y., during the term of her life, free of rent or other charge and we further direct that the said premises shall not be sold without her consent in writing, and we do also give and bequeath unto the said Mary Meyer the entire contents of said apartment to be hers absolutely and forever. * * * " (Italics not in original.)

" *Fifth.* Upon our simultaneous deaths or upon the death of the survivor in the event that the survivor has not made a new Will, we hereby give, devise and bequeath unto our executors and trustees hereinafter named, the sum of seventy-five thousand ($75,000) Dollars to be invested by them and to be reinvested by them from time to time in order to procure an income sufficient to pay the amount provided in the Third paragraph of this Will for Mary Meyer and the amount provided for our sister Lizzie Gaynor in the next succeeding paragraph of this Will, and the said income shall be applied in the following manner:

" (A) They shall pay unto Mary Meyer the aforesaid sum of Two hundred and fifty ($250) Dollars per month.

" (B) They shall pay unto our sister Lizzie Gaynor during her life time the sum of fifty ($50) dollars per month, payable in advance on the 1st day of each and every month, such payments to begin immediately upon our simultaneous deaths or the death of the survivor in the event that the survivor has not made a new Will."

" *Thirteenth.* Upon the death of Mary Meyer or Lizzie Gaynor the respective portion of the trust fund aforesaid kept invested for the benefit of the one dying we give, devise and bequeath to our nephew Andrew Pelligrini, and our niece Esther Pelligrini, his wife, upon the terms and conditions as provided in the previous paragraph, and upon the death of Mary Meyer and Lizzie Gaynor we give, devise and bequeath the principal of said trust fund and all our property, both real and personal of whatsoever kind and nature and wheresoever situated which may then remain unto our nephew, Andrew Pelligrini and our niece, Esther Pelligrini, his wife, jointly as aforesaid."

Although by the 3d item the income of $250 a month for Mary Meyer was, as noted, " to start immediately upon our simultaneous deaths or upon the death of the survivor," and a similar direction was made in respect to Lizzie Gaynor in the 5th item, the trust referred to was not actually erected until July 1, 1931. In the interval the income of the estate as a whole averaged only three per cent, as a result of which the executors paid to Mary Meyer only $150 a month and to Lizzie Gaynor an average of $23.91 per month from the time of the death to this date.

Four separate questions are propounded respecting the rights of these beneficiaries, but the determination of the rights of each must be separately undertaken for the reason that the phraseology creating the respective benefits differs in some particulars. Mary Meyer is now eighty years of age and Elizabeth Gaynor is seventy-one.

The first question propounded is as to whether the benefits conferred by the quoted provisions of the will constitute annuities. In the opinion of the court the particular pigeonhole into which these bequests are to be placed for the purposes of classification is not material. The only pertinent matter is to determine what the testators meant by the language employed. The subject of such a classification has been so exhaustively treated in many opinions, prominent among which may be noted the illuminating discussions of Surrogate SLATER of Westchester county in *Matter of Smathers* (133 Misc. 812, 815 to 817) and in *Matter of Gabler* (140 id. 581, 587, 588), that it is unnecessary for this court to attempt to cover the same ground.

In last analysis, however, adjudicated cases on subjects similar

to that presented by the will at bar are not helpful in reaching a decision respecting the desires envisaged by the language employed in another testamentary document. (See *Matter of McCafferty*, 142 Misc. 371, 372, 373, and cases cited.) The question in each case must be resolved by an analysis of the particular words employed, when read in the light of pertinent circumstances. (*Matter of McCafferty, supra,* 372.)

Approaching a determination of the rights of Mary Meyer, it will be observed from the portions of item 3 of the will which have been italicized that the $250 monthly payments are not only directed to start immediately upon the death of the testators or their survivor, but are " to be paid out of the trust fund hereinafter erected for that purpose." The 5th item, after erecting the trust, provides that its " income shall be applied in the following manner: (A) They shall pay unto Mary Meyer the aforesaid sum of $250 per month."

If the direction of the 3d item just quoted stood alone, it would be obvious that the entire fund, both principal and interest, was dedicated to the solution of the directed payments, and the real question for decision on this phase of the problem is whether the second quoted direction, respecting application of income, is so incompatible with this result as to constitute a diverse provision. In the opinion of the court it is not, since a clear testamentary gift will not be restricted by a later direction which is not equally clear. (*Matter of Rossiter*, 134 Misc. 837, 841; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Schulman*, 136 Misc. 169, 170; *Matter of Judge*, 141 id. 254, 255.) Obviously, income can be earned only as a result of the investment and use of money, wherefore the direction of the testators for payment in advance, beginning immediately after the death of their survivor, must have contemplated the employment of some fund other than the income to be derived from the investment of the specified $75,000. The only question, therefore, is as to the source of the payment which testators had in mind. The words employed leave no doubt on this subject. " Such sum " is " to be paid out of the trust fund hereinafter created." Since " immediately " upon the death of the testators or their survivor there could be no income on the fund from which to make the payment, it seems obvious that it must have been the intention to have the payment made from principal. It follows, therefore, that the executors were in error in their interpretation of the rights of this beneficiary, and that the difference between the $150 per month paid to Mary Meyer from the date of death to July 1, 1931, and the directed $250 monthly payment, must now be made good to her from the principal of the fund.

Whereas the testamentary language is not equally clear in respect to the payments directed to be made to Lizzie Gaynor, for the reason that the source from which the payments are to be made prior to the time that the trust fund yielded income, is not indicated, it is equally obvious, for the reasons heretofore stated, that the testators intended that she should receive fifty dollars a month to begin immediately upon the death of the survivor since they expressly said so. The somewhat inartificial wording of the will as a whole inclines the court to the belief that testators' directions to their draftsman contemplated that the rights of both beneficiaries should be identical in their varying amounts and both should be payable solely from the principal and income of the trust fund. It follows, therefore, that the deficiencies in payment, here in question, should also be made up to Lizzie Gaynor out of the principal of the trust.

The directions of the 13th item contemplate a *pro tanto* termination of the trust upon the death of either of these beneficiaries. It would, therefore, follow that whereas the total principal sum is to be held *in solido* during the joint lives of the two beneficiaries, five-sixths thereof would be allocated as a bookkeeping item in trust for Mary Meyer and the balance for Lizzie Gaynor. Any income in excess of that necessary to make the monthly payments to the respective beneficiaries and to pay the natural expenses of administration, should be accumulated and added to the respective principals until the impairment required for making the payments to July 1, 1931, in full, is made good. (*Matter of Chauncey*, 119 N. Y. 77, 81, 82 *et seq.; Spencer* v. *Spencer*, 38 App. Div. 403, 410.) After this has been accomplished, any surplus income must be paid over to Andrew Pelligrini and Esther Pelligrini, as the next eventual estate, in accordance with the direction of item 13. (*Spencer* v. *Spencer*, 38 App. Div. 403, 410; *Matter of Hartfield*, 139 Misc. 214, 218, 219; *Matter of Meyer*, 140 id. 1, 4.)

The application for an allowance to the attorneys for Mary Meyer cannot be decided in the absence of a hearing, for which purpose the matter may be set down in the usual course.

Proceed accordingly.