Matter of the Judicial Settlement of the Account of JOSEPH L. MYERS and CHARLES W. SAACKE, as Executors of the Last Will and Testament of ROBERT W. TAILER, Deceased; for the Acts and Doings of the Said Decedent as Trustee of the Trust for the Benefit of JAMES B. PEARSALL under the Will of PHEBE PEARSALL, Deceased.

(Surrogate's Court, New York County, December, 1916.)

Rules — of construction — wills — gift.

Wills — construction of — gift to a class not presumed — trusts — when interests in remainder vested — meaning of words "share and share alike" — residuary estate — lapse.

The rule, that, where a gift is contained merely in words of direction to pay over, a futuritive or contingent interest is created, is a rule of construction only and must be applied in subordination to the intention of the testator as gathered from the words of gift and from the general scheme of the will and in no instance will the established rule requiring the court to hold an estate or interest vested rather than contingent be ignored.

Where, from the context of a last will drawn by a technical draftsman, it is not apparent that words of technical and settled meaning were used in another sense, they must be construed according to their legal signification.

While the context of a last will may be used to elucidate a particular clause which presents difficulties of interpretation, the court is not required to read into the granting clause of a remainder share and share alike an intention to change the well-settled and technical signification attaching to the particular words of gift where it is doubtful whether a gift in a preceding sentence standing alone would constitute a gift to a class.

By the will of testatrix a certain sum was given to her executors in trust to be applied to the sole use and benefit of her nephew during his life, and, in case he did not survive testatrix, the principal of the trust fund was bequeathed to the lawful issue of said nephew *per stirpes* and not *per capita.* The will further directed that at the death of said nephew, in case he survived testatrix, the executors should pay the principal of the trust fund to the two children, naming them, of said nephew, share and share alike.   *Held,* that as other provisions of the will indicated a general scheme to create vested interests the interests in remainder given to the children of said nephew vested at the death of the testatrix.

The words " share and share alike " always import distributed interests or a tenancy in common and not a joint tenancy or survivorship and each of the nephew's children took a moiety of the trust fund subject to the life estate of their father, and the heirs of the one who died after testatrix but before the life tenant were entitled to his share, and the share of the other remainderman who predeceased testatrix lapsed and became a part of the residuary estate under the will.

PROCEEDING upon the judicial settlement of the account of executors.

Beekman, Menken & Griscom, for executors.

Cravath & Henderson, for Augustus B. Field and certain other residuary legatees.

Lannon & Bailey (William H. Harris and John David Lannon, of counsel), for administratrices of Thomas Pearsall.

Surrogate's Court, New York County, December, 1916.    [Vol. 98.

FOWLER, S.  In this proceeding for the judicial set-
tlement of the account of the executors of the last will
and testament of Robert W. Tailer, deceased, a trustee
of the trusts created for the benefit of James B.
Pearsall under the will of Phebe Pearsall, deceased, a
construction of the said will of Phebe Pearsall, the
settlor of the said trusts for the benefit of said James
B. Pearsall, seems to be necessary and jurisdictional.
The jurisdiction is duly invoked.

Paragraph No. IX of the will of Phebe Pearsall lim-
iting the trust fund now in controversy is as follows:
" IX. I give and bequeath to my executor, or execu-
tors, the sum of one hundred thousand dollars, in
trust, the income of which is to be applied to the sole
use and benefit of my nephew, James B. Pearsall,
during his life, and in case he shall not survive me,
I give and bequeath the said principal sum of one
hundred thousand dollars to his lawful issue, *per
stirpes* and *not per capita*.  And I further direct that
at the death of the said James B. Pearsall, in case he
shall survive me, my executor or executors shall pay
the said one hundred thousand dollars to his children,
Helen Pearsall and Thomas Pearsall, share and share
alike."  Phebe Pearsall, the settlor of the trust, died
July 9, 1895.  James B. Pearsall, the beneficiary of
the fund, held in trust for his own life under para-
graph IX of the will of Phebe Pearsall, departed this
life intestate on January 20, 1916.  The Helen Pear-
sall mentioned in paragraph IX aforesaid predeceased
Phebe Pearsall, the settlor.  The Thomas Pearsall
mentioned in said paragraph IX predeceased the life
tenant, his father, James B. Pearsall, but survived
Phebe Pearsall.  The will of Phebe Pearsall contains
a comprehensive residuary clause which embraces all
estates and interests of Phebe Pearsall not otherwise
disposed of by her will.

Misc.]   Surrogate's Court, New York County, December, 1916.

The contentions now made are substantially as follows: The legal representatives of Thomas claim, in opposition to the residuary legatees, the entire remainder of the fund bequeathed by said paragraph IX. Their theory is that the children of James B. Pearsall, as a class, were bequeathed the remainder after James B.'s life interest, and that membership in this class is to be determined not as of the time of the life tenant's death, but as of the time of the death of the testatrix. The residuary legatees contrarywise urge that the remainder interest was contingent until the death of the life tenant, and that, as both Helen and Thomas predeceased the life tenant, or the life beneficiary, the entire remainder interest lapsed and fell into the residuary estate. Neither claim can, I think, be maintained in its integrity. Both are overstatements. The various contentions have, however, been most elaborately and, I may add, skillfully pressed by the various counsel. But the true construction does not seem to me to be a very difficult one.

The interests in the remainder given to the children of James B. Pearsall *nominatim* were vested as of the death of Phebe Pearsall. The contrary contention must necessarily be based upon the rule that where a gift is contained merely in words of direction to pay over, a futuritive or contingent interest is created. Now this rule is a rule of construction merely and it is subordinate to several other principles always applied in courts of construction whenever possible and proper. Let us examine for a moment the operation of this rule. In the case of *Matter of Ingersoll* (reported *sub nom. Matter of Van Kleeck,* 95 Misc. Rep. 51), as surrogate I had occasion to apply the rule relative to the construction of gifts contained in bequests to pay over. Since that

decision the case of *Fulton Trust Co.* v. *Phillips,* therein referred to, has been affirmed by the Court of Appeals (218 N. Y. 573). The Court of Appeals referred to some of its earlier decisions, and particularly to its recent decisions in *Dickerson* v. *Sheehy,* 209 N. Y. 592, and *Cammann* v. *Bailey,* 210 id. 19, and again repeated that the " divide and pay over rule " is a rule of construction only and must be applied in subordination to the intention of the author of the will as gathered from the language of the clause construed, and also from the general scheme of the testament. No doubt, as stated by the Court of Appeals, the " divide and pay over rule " will more readily be invoked in construing a general legacy or devise than in the course of deciding the quality or quantity of a residuary estate. In no instance will such rule ignore the established rule requiring a court of construction to hold an estate or interest to be vested rather than contingent. In this case now here the intention of Phebe Pearsall to vest the remainder interest must therefore *prima facie* be assumed.

To ascertain her actual intention resort may however be made to cognate limitations contained in her will. In paragraph VIII, after giving a life interest in a fund of $10,000 to her niece, Frances Pearsall Coles, the testatrix, Phebe Pearsall, provided: "At her death I direct that said principal sum of $10,000 shall be paid to Helen Pearsall and Thomas Pearsall, children of James B. Pearsall." In paragraph X, after giving a life interest in a trust fund of $30,000 to her nephew, Nathaniel Coles Pearsall, the will provides: "At his death I give and bequeath the said sum of $30,000 to Thomas Pearsall and Helen Pearsall, children of James B. Pearsall, share and share alike. In case the said Nathaniel Coles Pearsall shall

Misc.] Surrogate's Court, New York County, December, 1916.

not survive me I give and bequeath the said sum of $30,000 to the said Thomas Pearsall and Helen Pearsall, share and share alike." In paragraph IV of the codicil Frances Pearsall Coles, mentioned in paragraph VIII of the will, is given a life interest in a further sum of $10,000, and then it is provided: "At her death I direct that said principal sum of $10,000 shall be paid to Helen Pearsall and Thomas Pearsall, children of James B. Pearsall; this being in addition to the $10,000 provided in the paragraph numbered eight of said will." But while the construction of allied bequests is argumentative it is not conclusive.

Paragraph X of the will of Phebe Pearsall has already been construed in this court by Mr. Surrogate Cohalan to give to Helen and Thomas vested interests. 91 Misc. Rep. 212. The language of paragraph X left little room for doubt that the interests therein created were vested. The difference of phraseology in paragraphs IX and X of Phebe Pearsall's will is not sufficient to indicate a very positive intention to create future estates or interests of different quantity or quality from that limited in paragraph VIII. Standing alone paragraph IX might, perhaps, lend itself more easily to a construction in favor of a contingent remainder under the " divide and pay over rule." But having regard to the reservation which always accompanies the juridical application of that rule the surrogate is, I think, required to hold that paragraph IX also limited vested interests by way of remainder. But let me pursue the matter further.

The testatrix, Phebe Pearsall, in paragraphs VIII, IX and X of her will and paragraph IV of the codicil thereto, bequeathed similar interests to Helen and Thomas Pearsall. One general scheme seems to pervade the bequests of all the remainder interests in the

8

Surrogate's Court, New York County, December, 1916. [Vol. 98.

four paragraphs. Helen and Thomas Pearsall *nominatim* were clearly given future interests to take effect in possession after the deaths respectively of testatrix's niece, Frances Pearsall Coles, or testatrix's nephew, Nathaniel Coles Pearsall, or James B. Pearsall, their father. In paragraph VIII of such will it is provided that the principal sum of $10,000 " shall be paid " to them. So also in paragraph IV of the codicil. In paragraph IX of the will it is provided that the executors " shall pay " the said $100,000 to them. In paragraph X the testatrix changes her language to more definite and positive language. She there gives and bequeaths the sum of $30,000 to Helen and Thomas, subject to a life interest.

Doubtless words of technical and settled meaning in this will must be construed according to their legal signification, as it is not apparent from the context of the instrument that they were used in another sense. *Matter of Catlin,* 97 Misc. Rep. 223. While there is some sort of general scheme evident in the several limitations noticed, yet the limitation in paragraph IX, it will be observed, is peculiar and particular. It is improbable that a person obviously versed in the rules of construction applicable to wills would not more clearly contradistinguish vested from contingent interests than it is claimed, by counsel for Thomas's legal representatives, was done by the draughtsman of paragraph IX of the will of Phebe Pearsall. The will of Phebe Pearsall is the product of a technical draughtsman. The intent of this instrument so draughted can be ascertained only from the technical language therein employed. In other words, the intent of testatrix in this instance coincides with the legal meaning of the technical language employed by the draughtsman of her will. If it is fair to attribute to the testatrix an intention to create a contingent in-

Misc.]    Surrogate's Court, New York County, December, 1916.

terest by using language compelling the application of the " divide and pay over rule," it is necessary also to credit the testatrix with sufficient understanding of the difficulties of construction to prompt her clearly to express herself if she intended that the interest created in one paragraph should be contingent and not of the same quality as that created in the next succeeding paragraph in favor of the same persons. The testatrix, I think, carefully pointed out in the different provisions of her will the kind of persons entitled to take a given bequest on the death of the prior entitled beneficiary before her. Had the testatrix intended that the death of Thomas prior to the death of his father, James B. Pearsall, should prevent Thomas from taking title to the moiety of the remainder interest at her own death she would have expressly so provided. This she did not do.

My conclusion that a moiety of the trust fund vested in Thomas Pearsall at the death of the testatrix precludes the residuary clause from extending its operation in any event to the share of Thomas. In order, however, to negative the inclusive operation of the residuary clause also upon what I hold is the lapsed share of Helen, the administratrices of Thomas insist that both the remainder interests vested because the gifts to Helen and Thomas were not to them individually, but to them as a class, which closed only when the testatrix died. That construction seems to me novel and unjustifiable. The characteristics of a gift to a class have been often stated and most clearly. *Matter of King*, 200 N. Y. 189, and cases cited therein. A gift to a class doubtless resembles a joint tenancy, but more closely a gift to a *quasi* corporate entity. The gift to the entity has nothing to do with the components of the class until the time of division of the shares arrive. In paragraph IX the gift is to indi-

Surrogate's Court, New York County, December, 1916.    [Vol. 98.

viduals *nominatim*. An argument, however, is sought to be founded on the peculiar language of the first sentence of paragraph IX of the will of Phebe Pearsall. The legal representatives of Thomas say that the testatrix, by directing that the issue of James should take in case he predeceased the testatrix, evinced an intention that all the descendants of James should take as a class in the event he survived her, and therefore that the same intention should be accorded to the second sentence of paragraph IX, which provides for the actual disposition of the remainder interest in case James survive the testatrix. This is the strongest argument for that construction which carries all to the issue of James B. Pearsall. But it is not conclusive. In the case of children of a testator the construction contended for might prevail, but not here.

If we compare other paragraphs of the will it is evident that wherever a direct gift is made a substitutional gift is made to the beneficiary's issue upon the contingency that the first gift do not take effect. In so providing in the case of the gift to James B. Pearsall in paragraph IX the testatrix merely formulated the same general plan which she observed in making the gifts to her other nieces and nephews. But she differentiated the bequest contained in paragraph IX by the succeeding words of the bequest. She specifies whom she meant by issue and the nature of their interest, " share and share alike." In this instance the maxim "*Expressio unius est exclusio alterius*" is directly applicable. The question therefore is not what is the proper construction to be given to the first sentence in paragraph IX. The quality of the estate actually bequeathed by the second sentence is the only issue now to be decided. Reference to the first sentence is important only because its influence on the

intent of testatrix is properly to be considered along with that of the other portions of her will. While the context of a will may be used to elucidate a particular clause which presents difficulties of construction or interpretation, even when read as a part and portion only of the other dispositive provisions, there is nothing which requires a court of construction to read into the concluding sentence of paragraph IX, which is the granting clause of the gift, an intention to change the well settled and technical signification attaching to the particular words of gift there employed. In naming the sort of beneficiaries of the remainder interest in the first part of paragraph IX, the testatrix merely used the same general form of bequest which she had employed in paragraphs VIII and X of her will and paragraph IV of the codicil thereto. In providing that it was the issue of James who should take in general substitution of the gift to him the testatrix followed the form of bequest which she had used in the other gifts to nephews and nieces. The argument that in paragraph IX the testatrix created a class as legatees of the substitutional gift seems to me therefore to be weak and inconclusive. It is doubtful indeed whether the gift in the first sentence of paragraph IX, standing alone, would constitute a gift to a class. The intention of the testatrix would seem to point rather to a vested gift to the lawful issue of James B. Pearsall in being at the time of the execution of the will. *Matter of King, supra.* But the reason advanced by the legal representatives of Thomas really operates in the end against their own contention. If the first sentence of paragraph IX constitute a gift to a class, the change of language in the second sentence thereof remains to be explained, as it is particular. It is absolutely inconsistent with a gift to a class, as it is to the

individuals by name, Helen and Thomas, share and share alike, and not to the issue of James as a class. The words share and share alike always import distributed interests or a tenancy in common and not a joint tenancy or survivorship.

The explanation of the difficulties in paragraph IX seems in short to be that in the first part the draughtsman systematically followed the language by which the other substitutional gifts were created, and in the second sentence employed the same language as was used in the other gifts to Helen and Thomas. But in paragraph IX, when he comes to the clause limiting the gift, he particularized so as to meet the wishes of testatrix in the event either Helen or Thomas predeceased her. Had testatrix intended either to take the share of the other, the limitation would have read, " to Helen and Thomas or the survivor." As paragraph IX stands, the gift to Helen lapsed and that to Thomas vested. To each was bequeathed a moiety of the trust fund, subject to the life of their father.

There is no controversy in regard to what persons are the beneficiaries of the residuary estate. Nor is there any doubt raised that the residuary estate swallows up all the lapsed legacies. It clearly carries the lapsed gift to Helen.

I therefore hold that the share of Thomas should be paid to his legal representatives, who appear in this proceeding, and that the other moiety of the *corpus* of the trust fund of $100,000 should be paid to those entitled to take the residuary estate under the will of Phebe Pearsall.

Decreed accordingly.