In the Matter of the Estate of EDMUND W. CORLIES, Deceased.

Surrogate's Court, Kings County, February 27, 1934.

*Cullen & Dykman* [*Lyman Sessen* of counsel], for the Brooklyn Trust Company, substituted trustee.

*Slayton & Jackson,* for Newton and Stuart C. Adams.

*Murphy & Fultz,* for Maria East, general guardian for Corlies Adams, an infant.

*Paul G. Gravenhorst,* special guardian for Anne Louise Snodgrass.

WINGATE, S. The will which is the subject-matter of the present construction proceeding was executed on March 11, 1899. Its terms, so far as presently pertinent, directed the erection of a trust in the principal sum of $100,000, with income payable to testator's widow for life, and on her death the principal to fall into the residue of his estate. A like trust of $30,000 was erected for testator's mother, its principal also falling into the residue on her death.

Testator then gave the residue of his estate to his trustees, " to divide * * * into as many equal parts or shares as I may leave children surviving me, one share to represent each child," with directions to pay the income of each trust to the child for whose benefit it had been erected, with the power to invade the principal in specified amounts under stated conditions.

The distribution in final possession was directed by the " seventh " item of the will, about which the present controversy centers. This reads: " In case of the death of any child of mine leaving lawful issue such issue shall stand in the place of and represent their deceased parent and take the share representing such parent remaining (sic) in the hands of my Executors and Trustees with all accumulations and increase thereon in equal proportionate parts, and in default of issue, the share remaining in the hands of my Executors and Trustees of any child so dying, shall fall into and become a part of my residuary estate."

At the time of his death five children of testator were living, Thomas, Sarah, Howard, Arthur and Annie. The first named died many years ago, unmarried and without children or other descendants, and his share of the estate was, by direction of Surrogate ABBOTT, added to the principal sums held in trust for the other four. (Matter of Corlies, 11 Misc. 670.) The next three named children are still living, and the fifth, Annie, has recently died. The questions presently propounded for determination concern the proper devolution of the remainder of the trust erected for her.

Annie had three children, Edmund, Newton and Stuart. The latter two are living, but Edmund predeceased the life tenant, leaving two children, Corlies and William. The issue raised in this proceeding is as to whether Newton and Stuart, the two children of Annie, are entitled to divide the remainder between them, or whether the children of the deceased son, Edmund, are entitled to receive a proportionate share thereof.

The court feels under obligation to most of the counsel in the case for their masterful self-restraint in refraining from the useless effort and waste of time involved in quotations from the language of decisions interpreting the individual language of other wills. It is of course primary that such particular precedents are wholly

valueless in the interpretation of the diverse phraseology of other wills. (*Matter of Watson*, 262 N. Y. 284, 297; *Matter of Rossiter*, 134 Misc. 837, 839; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissman*, 137 Misc. 113, 114; affd., 232 App. Div. 698; *Matter of McCafferty*, 142 Misc. 371, 372; affd., 236 App. Div. 678; *Matter of Gatehouse*, 149 Misc. 648, 650; *Matter of Cohen*, Id. 765, 777.)

In the present controversy, as in so many involving the interpretation of wills executed prior to the enactment of chapter 379 of the Laws of 1921, the crucial question involves the meaning to be attributed to the word " issue."

It is a well-established principle of documentary construction that the law existing at the time and place of its execution is deemed to be incorporated therein with like force as if set forth *in extenso.* (*McCracken* v. *Hayward*, 43 U. S. 608, 613; *Edwards* v. *Kearzey*, 96 id. 595, 601; *People ex rel. City of N. Y.* v. *Nixon*, 229 N. Y. 356, 361; *Illinois Bankers Life Assn.* v. *Collins*, 341 Ill. 548, 552; *Matter of Cohen*, 149 Misc. 765, 769.)

In December, 1892, slightly more than six years prior to the execution of the will at bar, the Court of Appeals said: " Mr. Jarman and other text writers state the rule in conformity with the great weight of authority, that while the meaning of the word ' issue ' is not inflexible, and may in some cases designate ' children ' only, depending upon the intention as disclosed upon the whole instrument, nevertheless where its meaning is not restrained by the context, it is to be interpreted as synonymous with ' descendants,' and as comprehending objects of every degree, and that the construction is the same whether used in a bequest or devise   *   *   *. When one speaks of the ' issue ' of a person deceased, I think in most cases he would intend his descendants in every degree.   *   *   * I am of the opinion that in the majority of cases where the word ''issue ' is used, it is used in its legal sense." (*Soper* v. *Brown*, 136 N. Y. 244, 249, 250.)

In June, 1909, about ten years after the execution of the will, the highest court of the State again observed: " It is well settled in this state that the words ' legal issue ' when used in a will and unexplained by the context, have the meaning of descendants."

The will as a whole contains internal evidence of preparation by an experienced draftsman, for which reason it is incumbent upon the court to " give to the words used their usual and accepted meanings without enlargement and without restriction   *   *   * and when particular or technical terms are used  particular or technical interpretation or construction follows as of course in the absence of all clear intent to the contrary." (*Matter of Barrett*, 141 Misc.

637, 638.) (See, also, *Overheiser* v. *Lackey*, 207 N. Y. 229, 233; *Adams* v. *Massey*, 184 id. 62, 70; *Matter of Meyers*, 98 Misc. 108, 114; *Matter of Catlin*, 97 id. 223, 227; *Matter of Leonard*, 143 id. 172, 180; *Matter of Duffy*, Id. 421, 424.)

The interpretation of the meaning of the questioned word starts, therefore, with a strong factual inference that the intention of the draftsman of the will, which is necessarily imputed to the testator, was that the remainders of the several trusts erected for the primary benefit of his respective children were payable to their descendants indiscriminately. The remainder of the task of interpretation thereupon resolves itself into one of ascertainment as to whether the testamentary language exhibits sufficient internal evidence to the contrary to counterbalance this inference.

It is, of course, primary that testator's intention is to be gathered from a reading of the will in its entirety (*Matter of Loomis*, 149 Misc. 417, 418; *Matter of Burling*, 148 id. 835, 839; *Matter of Cronin*, 147 id. 611, 612; *Matter of Grauer*, 146 id. 469, 471; *Matter of Kirkman*, 134 id. 527, 528; *Matter of Gargiulo*, Id. 182, 185), and that one clause or part may frequently clarify the meaning of phraseology employed in another. (*Matter of McGowan*, 134 Misc. 409, 410, 411; affd., 228 App. Div. 779; affd., 254 N. Y. 513; *Matter of McCafferty*, 142 Misc. 371, 381; affd., 236 App. Div. 678; *Matter of Storey*, 134 Misc. 791, 796; *Matter of Farkough*, Id. 285, 286; *Matter of Leonard*, 143 id. 172, 184.)

Finally, that when a testator has, in one part of his will, demonstrated his ability of making a certain variety of gift in apt terms, the use of a variant mode of expression in another direction will give rise to an inference that he had a diverse disposition in view. (*Matter of Wells*, 113 N. Y. 396, 402; *Matter of Goldmark*, 186 App. Div. 447, 451; *Matter of Voight*, 178 id. 751, 755; *Matter of Hallet*, 8 Paige, 375, 378.)

The pertinence of these principles lies in a comparison of the phraseology employed in the sixth and seventh items of the will. In the sixth testator disposed of the remainder of his estate by the words: " to divide into as many equal parts or shares as I may leave children surviving me, one share to represent each child."

In the seventh he disposed of the remainders of these several trusts by the direction: " In case of the death of any child of mine leaving lawful issue such issue shall stand in the place of and represent their deceased parent and shall take the share representing such parent * * * in equal proportionate parts."

There is no conceivable ambiguity connected with the direction in the sixth item. Testator wished his children to participate in the remainder in " equal parts or shares " and he said so in unmis-

takable terms. If, as is contended by the grandchildren in opposition to the great-grandchildren, testator meant that the children of his children only should share in the remainders under the seventh item, why did he not say so in the same unmistakable manner by the mere substitution of " they " for " I " and " them " for " me " in the words employed in the sixth item? He did not do this but substituted a much longer and more complex provision for the simple direction previously used. This argues strongly that he had a different disposition in mind. When there is coupled with this fact the further circumstance that when he referred to the immediate devolution from himself, the gift was to his " children," but when he referred to devolution from them, he employed the word " issue," which at that time had the clearly defined legal meaning of descendants without reference to degree, it seems apparent that he meant something different from that intended in the sixth item. The word " issue " must mean either children alone or descendants indiscriminately, and since it apparently does not mean the former, it must signify the latter.

A further difficulty with the interpretation contended for by the grandchildren lies in the direction of the will that the " issue " of testator's deceased child shall share in the remainder " in equal *proportionate* parts." If it were the intention of testator that none but one of his children's children should share, the word " proportionate " would be superfluous and meaningless, as is apparent from a reading of the direction of the sixth item. If only children were to take they would share in equal parts, not in equal " *proportionate* " parts. The result of upholding the grandchildren's construction would, therefore, be the deletion of the word " proportionate." It is, however, primary that, if possible, every word in a document is to be given effect in its construction, and that excision is a desperate remedy which is to be adopted only as a last resort when all efforts to reconcile an inconsistency by construction have failed. (*Matter of Buechner*, 226 N. Y. 440, 443; *Fleischman* v. *Furgurson*, 223 id. 235, 239; *Adams* v. *Massey*, 184 id. 62, 69; *Van Nostrand* v. *Moore*, 52 id. 12, 20; *Sedlaczek* v. *de Dreuzy*, 220 App. Div. 446, 450; *Matter of Valverde*, 148 Misc. 347; *Matter of Reppucci*, 145 id. 671, 677, 678; *Matter of Leonard*, 143 id. 172, 184; *Matter of McEvoy*, 139 id. 349, 352; *Matter of Kirkman*, 134 id. 527, 528.)

Much stress is laid by the grandchildren on the correlation of the words " parent " and " issue." Under circumstances such as are presented at bar, the language of the Supreme Court of Massachusetts in *Jackson* v. *Jackson* (153 Mass. 374) seems to furnish an adequate reply. The court by Chief Justice FIELD says (at p.

377): " We think that, as a matter of verbal construction, it would be as easy and natural to say that where the words ' parents ' and ' issue ' are used in connection with each other, the word ' parents ' means ancestors, as that the word ' issue ' means children; and in the construction of any instrument it is always necessary to look beyond the literal meaning of words."

By way of summary, therefore, it may be said that since this will was obviously prepared by an experienced draftsman in 1899 shortly after the Court of Appeals had enunciated the rule that " issue " signified " descendants " in the absence of a demonstration of a contrary intent, an inference arises that the testator had this meaning in mind in the remainder gift in item " seventh." This inference is not only not rebutted by any other portion of the will, but is strengthened by the fact that when testator elsewhere in the will desired to make a gift to children only, he used apt phraseology for the purpose, and by the further fact that to give it the meaning of " children " would effect the deletion of the word " proportionate," which is entirely comprehensible and capable of effectuation if " issue " is held to mean descendants.

It follows that the descendants of Annie are entitled, as directed in the will, to share in the remainder " in equal proportionate parts," Newton and Stuart each receiving one-third, and the children of their deceased brother, Edmund, dividing the remaining third between them.

The result herein attained is not only inevitable upon any logical application of the pertinent general principles of construction, but is consonant with the well-known canon that an interpretation which tends to effect equality is to be preferred over one producing the opposite result. (*Matter of Berbling*, 134 Misc. 730, 732; *Matter of Balsamo*, 136 id. 113, 115, 116; *Matter of Gebhardt*, 139 id. 775, 779; *Matter of Grefe*, 140 id. 134, 138; *Matter of Schrier*, 145 id. 593, 597; *Matter of Stulman*, 146 id. 861, 878.)

Proceed accordingly.