S. Samuel Di Falco, S.
The court is asked to construe the will of the testator in respect of the distribution of the fund held for the life of Charles F. Dwyer and the fund held for the primary life use of Camille D. Bergen and the secondary life use of Charles F. Dwyer.
(1) The court rules that the separate fund held only for the life of Charles is to be divided equally among his two children, Charles P. Dwyer and Doris D. Taylor. The will states that the remainder is to be paid to his ‘ ‘ children ’ ’ in equal shares, and the son and daughter are his only children. Even if the word “children”, particularly when read in conjunction with the phrases “leaving lawful issue surviving” and “without * * * leaving lawful issue surviving ’ ’, be interpreted as meaning ‘ ‘ issue ’ ’, it must nevertheless be construed as meaning issue per stirpes rather than per capita. In such a construction, the word “ children ” should be interpreted in its proper sense as meaning descendants in the first degree, and only secondarily,' that is, by way of representation, should more remote descendants be embraced within the meaning of the term. The court, therefore, holds that the descendants of the living son and daughter do not participate in the gift to “children of such deceased beneficiary ’ ’.
There appears to be no question on the present record as to the validity of the assignment of the interest of Charles P. Dwyer and if no such question is raised, payment will be made to his assignee in accordance with the terms of the assignment.
(2) The share that was held for the primary life use of Camille Dwyer Bergen was the .subject of a prior construction proceeding (144 Misc. 590). It was therein determined that paragraph Fifth of the will set up three separate trusts even though they were to be invested and administered in solido and that the trust for Camille and thereafter for Charles was valid. *138 At the time of that decision one beneficiary had died leaving-children and Camille died without any issue. The corpus of the trust for the first beneficiary had been distributed among her children. Camille’s death left Charles F. Dwyer as the last survivor of the three beneficiaries. This court reserved for future determination the manner of distribution of the fund held for the lives of Camille Bergen and Charles F. Dwyer. His death in 1957 presents for determination the question that was expressly reserved in the prior proceeding. ' .
There is no text in the will dealing explicitly with the fund that is held for two successive lives. It is argued, however, that the same text which disposes of Charles’ one-third share also disposes of the share held for the primary life use of Camille.
The Fifth paragraph of the will bequeaths $150,000 to the executors, in trust, to invest the principal as therein directed “ and to divide the net income arising from the investment of said trust fund equally in three parts between my nieces Miss Camille Dwyer and Mrs. Lulu Norton, and my nephew Charles F. Dwyer, children of my deceased brother Michael F. Dwyer, during their lives.” Upon the death of any of the beneficiaries “ of this trust fund * * * without such deceased nieces or nephew leaving lawful issue surviving ” the. fiduciaries were directed “ to pay over to the survivors or survivor of the said beneficiaries of this trust fund the portion or part of the income of this trust fund which otherwise would have been paid to said deceased beneficiary or beneficiaries during the term of the natural life of said survivors or survivor.” If there be two survivors, such portion of the income was to be divided between them, ‘ ‘ and if there should be but one surviving beneficiary the whole income of this trust fund shall be paid to said surviving beneficiary during the term of her or his natural life.” These are the only provisions that relate to distribution in the event of any beneficiary’s dying without surviving issue.
The testator then turned his attention to the possibility of surviving issue of the income beneficiaries. The will continues: ‘ ‘ In case of the death of any of said beneficiaries leaving lawful issue surviving, then in that event I hereby direct my Executors and Trustees hereinafter named, as soon as it can be conveniently done, to pay over to the child or children of such deceased beneficiary or beneficiaries the equal one-third share of the corpus of this trust fund which was invested for the benefit of said deceased beneficiary or beneficiaries ”. (Emphasis added.) Had the testator left out the words “ equal one-third ” and had said merely that ‘ ‘ the share of the corpus which was invested for the benefit of said deceased beneficiary [Charles] ” *139 should be paid to his issue, such direction would perhaps cover the portion originally set apart for Charles and the portion originally set apart for Camille and retained for the further life use of Charles. However the testator explicitly confined his gift to the ‘ ‘ equal one-third share of the corpus of this trust fund which was invested for the benefit of said deceased beneficiary or beneficiaries.” The use of the word “ beneficiaries ” might be deemed to embrace two of the equal shares except that earlier text in the same sentence indicates clearly that he was speaking in terms of segregated funds, not combined funds. Thus, he directed his fiduciaries to pay to the ‘ ‘ child or children of such deceased beneficiary or beneficiaries ” the one-third portion invested ‘ ‘ for the benefit of said deceased beneficiary or beneficiaries ”. (Emphasis added.) He thus explicity and clearly dealt only with the one-third share of a beneficiary who died leaving children.
The arguments in support of an implied gift to the children of Charles are based not so much upon the text of the will, but rather upon what is believed to be the testator’s plan and preference. Such an argument is based largely upon speculation as to what was in the testator’s mind.
The will contains a general residuary clause that is in no way limited or circumscribed in scope. The residue embraces all property not otherwise effectively bequeathed. It embraces the trust interest not disposed of in paragraph Fifth, including the remainder of the trust originally set apart for Camille. It could very well be that the testator actually intended such disposition of the remainder of a trust fund when no children of the beneficiary survived. The residuary legatees are all of the .children of his deceased brother Michael, whereas the trusts were set up for three of the children of that brother. The disposition of such a remainder through the residuary clause would have a basis in reason. However, the court does not place its ruling on the reasonableness of the plan. The rule is well established that a residuary legatee takes whatever falls into the general residue ‘ ‘ whether by lapse, invalid dispositions or other accident.” (Riker v. Cornwell, 113 N. Y. 115, 127.) “ The intention to include is presumed, and an intention to exclude, must appear from other parts of the will ’ ’. (Floyd v. Carow, 88 N. Y. 560, 568; Riker v. Cornwell, supra.) The will does not make any disposition of the trust remainder, and it thus falls into the residue.
(3) A further question arises in respect of the residuary clause. Three children of the testator’s brother were living when the testator made his will and were still living at his *140 death. One other child of that brother had died before the making of the will, but he left a daughter who is still living. The residuary estate is bequeathed £ ‘ unto the children of my deceased brother, Michael F. Dwyer, share and share alike, and if any of the children of said Michael F. Dwyer be dead at the time of my decease leaving lawful issue surviving them, the share that would go to the parent of said issue, if alive, shall go to said issue and be divided amongst said issue in equal shares after the payment of the bequests and legacies hereinbefore and hereinafter provided for. ’ ’
In the decree settling the executors’ account, the then distributable residue was divided in four parts, the daughter of Michael’s deceased son receiving one equal share. The others now argue that this grandniece of the testator is not entitled to share in the residue because a gift to a class does not ordinarily include persons who had died before the making of the will and the substitutional gift to issue is not operative because there is no share that would go to the parent of such issue. The rule upon which these respondents rely was restated as follows by Mr. Surrogate Frankenthaler in a decision in which the authorities were collated and discussed: ‘ ‘ Where testator has made a bequest to a class comprising collateral relatives, followed by a gift to the surviving issue of any who may have died before him or before the time fixed for distribution, it is generally held that the surviving issue of one who fits the class description but who is dead at the date of the execution of the will were not intended to have been included as beneficiaries thereunder.” (Matter of Cohen, 116 N. Y. S. 2d 333, 335.) The Surrogate pointed out that the rule so stated “ is not inflexible, however, and will yield to a contrary construction when the context of the will so requires.”
There are tokens of intention in the will of this testator which take this case outside the scope of the rule quoted above. The trusts created in the Fifth paragraph of the will were for the benefit of the three living children of the testator’s brother. The testator named each one of the three and he described them as children of his deceased brother. When he came to the residuary clause, however, he did not again name the children and he did not refer to them as the ££ said children ’ ’ of his brother or by any similar reference that would have pointed to the three persons previously identified. Instead he bequeathed the residue £ £ unto the children of my deceased brother * * * share and share alike.” The difference in the text of the two paragraphs is, under the circumstances, significant. Moreover, the substitutional gift to issue is to take effect in the event that ££ any of *141 the children of said Michael F. Dwyer be dead at the time of my decease leaving lawful issue surviving them.” (Emphasis added.) The making of a substituted gift “ for each person of a described group ‘ not alive at ’ a stated future date ” is another factor indicating an intent contrary to the general rule quoted above. (Restatement, Property, § 297, Comment, d, par. [4]; 3 Powell, Real Property, § 366, p. 168; Brooks v. Carter, 118 Mass. 407.) This testator could hardly have been oblivious to the difference in text in paragraphs Fifth and Seventh and the patently broader scope of the latter. However, even if he did not recognize such an obvious difference and if he were thinking only of the three children, we would reasonably expect him in the substitutional gift to use an expression indicative of death of a member of the primary class in the period between the making of the will and its becoming effective. Thus he might have said: “ if any of them shall die before me ”, On the contrary his phrasing of the substitutional gift confirms the conclusion that he intended to include all children of his deceased brother. The substitutional gift clearly embraces any child who is no longer in existence at the time of the testator’s death, provided that the child leaves issue surviving. The expression, viewed in its context, plainly includes the daughter of the predeceased son of Michael Dwyer.
(4) The trustee asks that it be permitted to retain for management, liquidation and future accounting, the property remaining in its hands which cannot be distributed in kind. The question is not capable of determination on the present record and decision thereon will be reserved.
The time of all parties to file objections to the account is extended to 10 days from the date of the publication of this decision.