Louis M. Greenblott,
County Judge and Acting Surrogate. This is a proceeding for the construction of the will of Bay S. Johnson, deceased. There are several issues herein involved.
I
ISSUE : SHOULD THE INHERITANCE TAXES BE APPORTIONED AND PROBATED AMONG THE BENEFICIARIES WHO SHARE IN THE ESTATE, OR SHOULD THEY BE PAID AS A GENERAL ADMINISTRATION EXPENSE?
The attorney for the executor contends that it was the intention of the testator that the inheritance taxes should be paid as a general administration expense under paragraph “ First ” of the will. The special guardian for the infant legatees disagrees and *644 contends that both the New York State estate tax obligation of $661.81 and the United States estate income tax of $43.08 should be equitably prorated among the legatees in accordance with section 124 of the Decedent Estate Law.
‘1 Prior to the enactment of section 124 of the Decedent Estate Law (1930) estate taxes were, generally speaking, payable out of the residuary estate (see 5 Jessup-Redfield on Surrogates’ Law and Practice, p. 398). This resulted in hardship and injustice in many cases. The natural objects of a testator’s bounty are generally those who are bequeathed the residuary estate and under the rule stated they were saddled with the entire tax while other beneficiaries — more distantly related or not at all related to the testator — would pay no taxes (5 Jessup-Redfield on Surrogates ’ Law and Practice, p. 398). This unsatisfactory situation prompted the enactment by the Legislature in 1930 of section 124 of the Decedent Estate Law (amended in 1940) which lays down the rule that estate taxes imposed by State or Federal authority are, in the absence of a contrary direction in the will, to be prorated by the Surrogate among the distributees in proportion to the values of their gifts ’ ’. (Matter of Pepper, 307 N. Y. 242, 245 [1954].)
Section 124 has been characterized as remedial in nature, and its direction that there be an apportionment of taxes in accordance with the formula therein prescribed is to be carried out unless there is a clearly expressed intention to the contrary in the will. (Matter of Durkee, 183 Misc. 382; Matter of Mills, 189 Misc. 136,141, affd. 272 App. Div. 229, affd. 297 N. Y. 1012; see, also, Matter of Vanderbilt, 295 N. Y. 964.)
There is a strong policy in favor of statutory apportionment. Those who contend against apportionment must bear the burden of proof (Matter of Kaufman, 170 Misc. 436; Matter of Dettmer, 179 Misc. 844), and the direction in testator’s will must be clear and unambiguous. The will does not contain a clear and unambiguous direction against apportionment of taxes as prescribed by section 124 of the Decedent Estate Law.
Paragraph “ First ” reads as follows: “ I direct that all of my just debts, funeral expenses and expenses in connection with the administration of my estate be paid.” Nowhere does there appear a direction that the estate taxes be paid as an expense of administration. The provision of section 124 requiring equitable apportionment among the beneficiaries is, therefore, mandatory, and I order the New York State estate tax obligation of $661.81 to be equitably prorated among the beneficiaries. As to the United States income tax of $43.08, I reject the contention of the special guardian that this expense should *645 also be equitably prorated among the beneficiaries. Section 124 does not cover income taxes, but estate taxes only. Income produced after the date of death is not considered in computing the taxable estate and is not an inheritance tax. (Matter of Andrus, 169 Misc. 740.) Therefore, I direct that the United States income tax of $43.08 be treated as an expense of administration.
II
ISSUE: DOES THE SHARE OF THE DECEASED BROTHER, WILLIAM D. JOHNSON, UNDER PARAGRAPH “ SECOND ” OF THE WILL, PASS TO HIS CHILDREN UNDER SECTION 29 OF THE DECEDENT ESTATE LAW?
Both the attorney for the executor and the special guardian agree that it does. This court disagrees and rejects the contention that section 29 of the Decedent Estate Law is applicable to this situation.
The testator, Bay S. Johnson, died November 18, 1960. His brother, William D. Johnson, predeceased him, dying April 14, 1955. Section 29 is known as the ‘ ‘ anti-lapse statute ”. At common law, a legacy or devise lapsed when the beneficiary died before the testator, but this section was enacted to preserve the legacy to the descendants of the legatee if he had the specified relationship to the testator. (Matter of Neydorff, 193 App. Div. 531 [1920].)
The purpose of the statute was to prevent a lapse. However, in the ease at bar, no lapse results because William D. Johnson predeceased the testator. The testator specifically provided for this contingency in paragraph “ Second ”, and his intentions should be carried out. Paragraph ££ Second ” reads as follows: ££ To my brothers, William D. Johnson and * * * I hereby give, devise and bequeath one-half of my entire estate, to be theirs absolutely and forever * * * however, in the event my brother William D. Johnson shall predecease me, then I hereby give and bequeath his share to his children, to be divided between them equally, share and share alike.” This language is clear. It is the decision of the court that section 29 of the Decedent Estate Law has no application to the bequest to William D. Johnson and the children of William D. Johnson will share equally in that portion of the estate which would have passed to William D. Johnson under paragraph ££ Second”.
The issue then remains — what of the grandchildren of William D. Johnson, namely, Leo Daniel, Elaine, Betty and Carl Johnson, whose father, Leo, predeceased the testator? It becomes necessary to determine the intention of the testator when he stated in paragraph ££ Second ”,££ in the event my brother William D. Johnson shall predecease me, then I hereby give and bequeath *646 Ms share to his children, to be divided between them equally, share and share alike.”
If the testator intended to use the word “ children” in its primary sense as signifying descendants in the first degree only, this is a gift to a class, “ children ” of William D. Johnson, and only those children of William D. Johnson who survived the testator’s death would take. In that event, the grandchildren of William D. Johnson would be excluded.
While it is ordinarily presumed that a testator intended to use the word “children” in its primary sense as signifying descendants in the first degree only (Pimel v. Betjemann, 183 N. Y. 194; Matter of King, 217 N. Y. 358; Matter of Pulis, 220 N. Y. 196, 204; Matter of Schaufele, 252 N. Y. 65), where the reason of the thing demands it, the term is capable of signifying descendants in unlimited degrees. (Prowitt v. Rodman, 37 N. Y. 42; Matter of Brown, 93 N. Y. 295; Matter of Paton, 111 N. Y. 480; Matter of Tone, 186 App. Div. 361, affd. 226 N. Y. 696; Matter of Weil, 151 Misc. 841, affd. 245 App. Div. 822, affd. 271 N. Y. 608; Pfender v. Depew, 136 App. Div. 636, 640; Matter of Stecher, 190 Misc. 502; Matter of Harrison, 190 Misc. 215; Matter of Meyn, 81 N. Y. S. 2d 129.) To construe the word narrowly here would have the effect of disinheriting persons who would have been distributees of the decedent had he left no will. The presumption against disinheritance prevails unless the will evidences an unmistakable intent to the contrary. This will does not so indicate. As the court said in Matter of Meyn (supra, p. 131): “ The most striking feature of this will is the careful manner in which the testator followed the statute of distributions as it applied to his family. The substitutionary bequest to the children of his brother * * * has all the earmarks of a ‘ family gift ’, and indicates an intent to preserve equality between the branches of his family.” This court agrees with the reasoning of the court in Matter of Meyn (supra) and prefers the formula here that will preserve equality and prevent disinheritance. I am of the opinion that the testator did not intend to disinherit these grandnephews and nieces. Accordingly, under all the circumstances of this case, the word “children ” in paragraph “Second”, referring to the children of William D. Johnson, is to be read as “descendants”. Leo Daniel, Elaine, Betty and Carl Johnson will take the share which their father Leo Johnson would have taken if he survived the testator. This means that Roy C. Johnson receives one twenty-fourth of the testator’s estate; Richard J. Johnson receives one twenty-fourth; Ruth Henry receives one twenty- *647 fourth; Leo Daniel Johnson, one ninety-sixth; Blaine Johnson, one ninety-sixth; Betty Johnson, one ninety-sixth; and Carl Johnson, one ninety-sixth, of the estate.
Ill
ISSUE: IS THE SHARE OF THE DECEASED BROTHER JOHN L. JOHNSON, SR., UNDER PARAGRAPH “ SECOND” OF THE WILL, LIMITED TO THE EIGHT NEPHEWS AND NIECES WHO SURVIVED THE TESTATOR?
The question here involved is the interpretation to be given the following language of the testator. Paragraph “ Second ” reads, “ To my brothers * * * John L. Johnson, Sr., and * * * I hereby give, devise and bequeath one-half of my entire estate, to be theirs absolutely and forever, and in the event my brother John L. Johnson, Sr. * * * shall predecease me, I hereby direct that such share * # * shall be equally divided between my nieces and nephews hereinafter named ”.
John L. Johnson, Sr., did, in fact, predecease the testator, dying in December of 1949. The only mention of nephews and nieces appears in paragraph “Fourth c ”. It is, therefore, obvious that the testator had reference to those nephews and nieces named in paragraph ‘ ‘ Fourth c ’
The problem occurs, however, because four of the named nephews and nieces predeceased the testator, namely, Leo Johnson, Paul Johnson, Elwood Johnson and Joseph Handley. The question therefore arises whether the testator intended gifts to all 12 named nieces and nephews, regardless of whether they survived him, or only to those of the named nephews and nieces who survived him.
In my view, a great deal of light is shed on this question by the language used by the testator in paragraph ‘ ‘ Fourth c ’ ’. He leaves the residue of his estate to the 12 named nephews and nieces, but states, “to be divided between them equally, share and share alike, and if any of them shall predecease me, such share or shares shall be divided between the survivors of them.” Thus the testator specifically and clearly expresses his intention, at least as to the residue, that it was to be divided equally among those named nephews and nieces who survived him. It seems to me that the intent so clearly expressed as to the residue should carry over in the interpretation of paragraph “Second” in regard to the legacy originally bequeathed to John L. Johnson, Sr. The attorney for the executor and the special guardian have urged this position as well.
*648 This decision is buttressed by the general principles applicable to the construction of wills, one of the most important of which is that, if at all possible, all words in a testamentary instrument must be given effect in determining the composite meaning to be attributed to the language of a will. (Matter of Corlies, 150 Misc. 596, 600, affd. 242 App. Div. 703.)
Another canon of testamentary interpretation is that against intestacy, either complete or partial. This is to the effect that where the language of a will is ambiguous and is capable of two interpretations, the one effecting complete distribution of all of the assets of the decedent, and the other of which will result in a portion of his property devolving in intestacy as undirected, the former is to be preferred. (3 Bradford Butler, New York Surrogate Law and Practice, § 1936; Matter of Hayes, 263 N. Y. 219, 224-225.)
If the court were to hold that the one-sixth share originally bequeathed John L. Johnson, Sr., should be divided among the 12 named nephews and nieces, inasmuch as four of those nephews and nieces had predeceased the testator, their legacies will lapse and must pass according to the laws of intestacy. This view is untenable in the light of all the facts and circumstances.
It is, therefore, the decision of the court that the one-sixth share of the estate originally bequeathed to John L. Johnson, Sr., in paragraph “ Second ” pass to the eight nephews and nieces named in paragraph ‘ ‘ Fourth c ’ ’ who survived the testator, share and share alike.
IY
ISSUE: IN PARAGRAPH “ THIRD ” IS A TRUST CREATED, OR ARE THE DIRECTIONS OP THE TESTATOR, ‘ ‘ TO USE SAID PORTION OP MY ESTATE IN EQUAL PROPORTIONS POR THE BETTER. AND HIGHER EDUCATION OP MY SAID GRANDNIECES AND GRANDNEPHEWS ’ ’ MERELY PRECATORY WORDS AND TOO VAGUE IN MEANING TO CREATE A VALID TRUST?
It is elementary that in any question of testamentary interpretation, the object of the court is to seek to place himself in the testator’s place and to endeavor to determine what he had in mind, and so far as legally permissible, to effectuate it. The language “ for the better and higher education” is so vague that the testator’s intent will best be carried out by treating the gifts as outright bequests to the three persons named in paragraph “ Third”. In the case of the boys, at least, the purposes have already been effectuated. I am informed that John Raymond Johnson and Leo Daniel Johnson both have completed some form of advanced education, and that the infant Lynne Johnson is married.
*649 “ Better and higher ” education need not he formal in nature, nor must it be obtained in a college or university. The word “ better ” is especially vague, since one can only ask, “ Better than what?” — grammar school, high school, business school? The purchase of an encyclopedia or a series of the classics can lead to an improvement of one’s education.
In Matter of Wolfe (164 Misc. 504, 505) the court was called upon to pass upon a will which left property “ in trust * * * for the proper education of my brother ’ ’. There a construction was sought to determine the duration of this trust. The court said (pp. 505-506): “ The discipline of formal study and instruction is a part of education but so also are all the experiences of life, the aspects of nature, the hundrum and the unexpected happenings of a social existence among one’s fellows. All contribute to the unfolding and the maturing of the mind and character of man. ‘ Education is a broad and comprehensive term. It has been defined as “ the process of developing and training the powers and capabilities of human beings.” To educate, according to one of Webster’s definitions, is “to prepare and fit for any calling or business, or for activity and usefulness in life.” Education may be particularly directed to either the mental, moral, or physical powers and faculties, but in its broadest and best sense it relates to them all.’ (Mt. Hermon Boy’s School v. Gill, 145 Mass. 139,146,13 N. E. 354.) ”
In my view, the words “ better and higher education ” are too vague to permit a trust to come into being. Words may purport to create a trust, yet fall short of that end. (Matter of Graczyk, 66 N. Y. S. 2d 750.) This may result from precatory language merely imposing a moral obligation. The words may fall short because they are vague or indefinite. (See 3 Jessup-Redfield, Surrogates Law and Practice, § 2534; Aldrich v. Funk, 48 Hun 367.)
Another reason for holding that a trust was not created herein is that no powers were granted in the trust to the trustee in respect to the management of the alleged trust. One basic test of a trust is as to whether the fiduciary is granted the power to collect and apply income. (See Matter of Grauer, 146 Misc. 469.)
I hold, therefore, that no trust is created and that the gifts are absolute. (Matter of Abbe, 138 Misc. 210; Matter of Hoyt, 142 Misc. 344.)