Edward S. Silver, J.
In this successor trustee’s final accounting proceeding, petitioner requests construction of testator’s will in order to determine who is entitled to receive the trust principal. The matter involves testator’s intention as to the meaning of the words “ child or children her surviving ”, referring to his daughter and life income beneficiary of the testamentary trust created as follows:
“ second. I give and bequeath to my son, W. Newton Barnum, Fifty (50) shares of the capital stock of the Frederick H. Levey Company, standing in my name on the books of said Company, in trust nevertheless for the following purposes: to receive the income therefrom whether arising from dividends paid thereon or otherwise and to pay the same over to my daughter Ethel Barnum Howell during her natural life.
‘ ‘ third. At the death of my said daughter Ethel Barnum Howell should she leave any child or children her surviving then and in that event I give and bequeath said Fifty shares of said capital stock to said child or children to be divided between them equally, but if my said daughter should die leaving no child or children her surviving then and in that event I give and bequeath the said Fifty shares of said capital stock to my wife Sarah Adams Barnum and to my son W. Newton Barnum, to be divided equally between them or to the survivor of them should either of them die before my said daughter.”
When testator executed his will on April 18,1913, his daughter, age 27, had one child, De Witt C. Howell, age 3. Before testator died on January 23, 1917 his daughter had a second child, Francis P. Howell. Her trust terminated upon her death on April 11, 1966. She was survived by Francis, who has three children (the life beneficiary’s grandchildren). De Witt predeceased on January 16, 1965 leaving two adult and three minor children (the life beneficiary’s remaining grandchildren).
Francis claims that he is entitled to the entire principal of the trust ($137,416 now on hand plus $67,997 paid to him on July 2, 1966 on account of his remainder interest) to the exclusion of all of the grandchildren, and argues that he is the only “ child” surviving the life beneficiary and therefore the only trust remainderman. De Witt’s two adult children and the guardian of his three minor children contend that testator *415 intended to include the life beneficiary’s grandchildren in the words “ child or children ” and therefore are entitled to one half of the trust principal, on a stirpital basis of distribution. The special guardian for the three infants likewise maintains that testator intended to include the life beneficiary’s grandchildren in the term “children” but requests per capita distribution. The petitioning trustee takes no position as to inclusion of grandchildren but submits that, if they are included, distribution should be per stirpes.
Did testator intend to include his daughter’s grandchildren when he gave the trust remainder to ‘ ‘ the child or children her surviving!” Stated generally, did he use these words as meaning only first offspring, or as having the import of “ issue ” or “ descendants ”, immediate as well as remote? These questions are deceptively simple. But in situations resembling the present one they have frequently troubled the courts in weighing the demands for fair treatment made by grandchildren or more remote descendants of a testator or of a life beneficiary or other first taker under his will. The difficulty stems from the fact that a testator is presumed to use the words “ child ” or “ children ” in their usual sense of first offspring unless he clearly indicates the contrary and that, absent such clear indication, said presumption conflicts with other presumptions that come into play under certain circumstances as aids to construction. Not only do the courts in many cases weigh the presumptions differently, but often their opinions are divided as to whether there is a clear indication or “ unmistakable intent ” to use the words “child” or “children” as including grandchildren. Cases may therefore be cited to yield language in support of any proposition argued, as is evidenced by the able memoranda of law submitted by counsel herein. But they are subject to the recognized caveat that no will has a brother, that every will must be construed with reference to its language, provisions and testamentary plan in the light of surrounding circumstances, and that each case must be determined upon its own facts. (2 Davids, N. Y. Law of Wills, §§ 661, 997, 990; Ann. 14 ALR, 2d 1242; Matter of Villalonga, 6 N Y 2d 477, revg. 5 A D 2d 312, affg. 6 Misc 2d 587.)
The argument on behalf of Francis seems to be that under the circumstances the words “child or children” must be restricted to their usual and ordinary meaning of first offspring and presumptively was so intended by testator, and that the result which excludes grandchildren of the life beneficiary is unavoidable since Francis actually is the only “ child * * * surviving” the life beneficiary. Great reliance is placed on *416 Matter of Villalonga (supra). This court, however, does not agree with that argument. It views the circumstances herein differently and distinguishes the cited authority.
To ascertain testamentary intention as to the meaning of particular language or provisions we must read them in their context and view the will as a whole. The use of the same or of contrasting language or provisions elsewhere in the will and the testamentary scheme in general may clarify or furnish clues to testator’s intention as to the meaning and effect of the language in question. It often becomes necessary also to consider extrinsic evidence and the circumstances surrounding the execution of the will (Matter of Fabbri, 2 N Y 2d 236; Matter of Court, 196 Misc. 286).
In Matter of Villalonga (6 N Y 2d 477, supra) the will contained contrasting terms and provisions, both “ children ” and “grandchildren” being mentioned. This indicates a discriminating use of these terms and an awareness of the limited meaning of “ children.” The court found that the general distributive scheme did not disclose a testamentary purpose to benefit children of predeceased immediate offspring (p. 431). “ Since there was no testimony of the circumstances surrounding the execution of the will our conclusion must be predicated upon our own analysis of the context of the instrument ” (5 A D 2d 312, 314). “ The [Villalonga] case must be classified as one which assigns to the language a reasonable meaning [limiting ‘ children ’ to first offspring] which is not shown to be contrary to testator’s intent ” (35 N. Y. U. L. Rev., p. 494; see Matter of McNeil, 18 A D 2d 170). But that case does not exclude consideration of extrinsic facts or surrounding circumstances as may be gathered from Matter of Geib (46 Misc 2d 597, 599).
Testator, after directing payment of debts and funeral expenses and creating the aforesaid trust, bequeathed his cemetery lot to his son, the remaining shares of the Levey Company stock to his wife and son “ to be divided between them equally ” and the residuary estate to his wife whom he named executrix. He directed that ‘ ‘ no bonds be required of the trustee ’ ’ and that the “ transfer tax on the bequest given in trust for the benefit of my daughter be paid out of my residuary estate.” The will, a two-page holographic instrument, contained nothing else except the exordium, testimonium and attestation clauses and, of course, the signatures of testator and the subscribing witnesses, one of whom was apparently the attorney scrivener. There is in the will no repetition of the words “ child ” or “ children ” and no contrasting words such as “ issue ” or “ descendants ” which could furnish a clue as to the meaning testator *417 ascribed to the words “ child or children ”, There is nothing to show that he used these words with any degree of discrimination or exactitude (cf. Matter of Whittemore, 25 Misc 2d 309). In this respect testator’s will is colorless as to intention. Nor does his plan of distribution on its face offer much assistance.
Must we, then, in the absence of “unmistakable intent” to the contrary appearing in the will, assume that testator intended to restrict those words to first offspring, the effect of which would be to limit his largesse to the only “ child ” who survived his daughter to the exclusion of her grandchildren, the issue of a child who predeceased her Í The answer must be in the negative if the surrounding facts and circumstances are considered and negate that intention.
No one suggests that testator intended or even contemplated (i.e., gave any thought to) the possible result now sought by Francis as the only “ child * * * surviving ” whereby only he, on one side of the family of testator’s daughter, should receive upon her death the entire trust principal to the exclusion of his brother’s children. The presumption, that the words “ child ” or “ children ” were used by testator in their popular sense restricted to first offspring, gives way to an indication of his intention to include grandchildren found in the testamentary plan in the light of the following circumstances: (1) the fact that the time for determining the ultimate takers was postponed for a long time with the possibility that no persons answering the restricted description would then be living, in which event intestacy would result if, as occurred, the gift over should fail, unless the wider description was intended; (2) the fact that the birth of grandchildren to his daughter was far off when the will was made and the use of the words “ child ” or “ children ” was more natural to testator than the words “issue” or “ descendants ”, which under the circumstances will be interpreted as synonymous therewith; (3) the fact that the “ child ” of the life beneficiary now claiming the entire remainder was not even born when the will was made and the presumption that he could not have been preferred in testator’s contemplation over descendants of the child already born to the life beneficiary but who might and did predecease her; (4) absence of any facts to show that disinheritance of testator’s blood relatives and discrimination against one stock of his daughter was contemplated or intended; and (5) perhaps the most persuasive, the fact that testator’s plan of distribution is characterized by equality and “ family gift,” which would be destroyed if De Witt’s children should be excluded from taking the share their parent would have taken had he survived the life beneficiary. (2 Davids, *418 N. Y. Law of Wills, § 661.) “ The question in snch circumstances is one not of intention in the proper sense, but of the legal implications of one formula or another ” (New York Life Ins. & Trust Co. v. Winthrop, 237 N. Y. 93, 109, Cardozo, J.).
The record discloses that testator’s chief asset consisted of his interest in the Frederick H. Levey Company. When he died he owned 150 shares of its stock which constituted almost his entire estate. He bequeathed the stock equally, by giving 50 shares in trust for his daughter and by dividing the 100 remaining shares equally between his wife and son. He thus basically followed the statute of distribution as it applied to his three distributees. He provided “ family gifts ”, a term used to imply intention to have each gift remain with the particular unit or family to which it is given and, only if no member of the particular unit or family survives, to have it pass to another person or persons. It is a term referred to in some cases as supporting the expansion of the word “ children ” to cover “ grandchildren ” as part of the family unit intended to be benefited (Matter of McNeil, 18 A D 2d 170, supra; Matter of Johnson, 33 Misc 2d 643, 646; Matter of Hart, 185 Misc. 791; Matter of Meyn, 81 N. Y. S. 2d 129; Matter of Stecher, 190 Misc. 502; 15 Syracuse L. Rev., p. 309).
Viewing the will and its testamentary scheme in the light of the surrounding circumstances the court finds that testator used the words “ child or children ” in the enlarged sense of “ issue ” or “ descendants ” and determines that one half of the trust principal is to be distributed to Francis P. Howell and one half to the children of De Witt C. Howell in equal shares (Matter of Dwyer, 18 Misc 2d 135; Matter of Meyn, supra; Ann. 126 A. L. R. 170; Ann. 13 ALR 2d 1023, 1054, 1065).